David **DRICHAS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–04–00002–CR.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 15, 2007.

Decided Feb. 16, 2007.

Discretionary Review Refused June 13, 2007.

Discretionary Review Refused June 13, 2007.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for appellant.

Nicole Habersang, Asst. Dist. Atty., Texarkana, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

The Texas Court of Criminal Appeals has remanded this appeal to our Court for reconsideration of the sufficiency of the evidence to support the conviction of David Drichas. As we have set out in our previous opinions, Drichas was convicted by a jury for evading detention with a motor vehicle, and there was a finding that the vehicle was used as a deadly weapon. In our first opinion, we found the evidence both legally and factually insufficient to support the deadly weapon finding. The Texas Court of Criminal Appeals concluded there was some evidence and remanded to us for another factual sufficiency review. After a second full analysis of the evidence, citing to what at that time was the Texas Court of Criminal Appeals' most recent pronouncement on that topic (*Zuniga v. State*, 144 S.W.3d 477 (Tex.Crim.App. 2004)), we again found the evidence factually insufficient and remanded for a new trial on the deadly weapon finding. *Drichas v. State*, 187 S.W.3d 161 (Tex.App.-Texarkana 2006), *vacated*, 210 S.W.3d 644 (Tex.Crim.App., 2006).

*Everything Old Is New Again*

Since our last opinion in January 2006, the Texas Court of Criminal Appeals released its opinion in *Watson v. State*, 204 S.W.3d 404 (Tex.Crim.App.2006), in which

it stated that its explanation in *Zuniga* concerning how factual sufficiency review was to be conducted was in one particular respect misleading and incorrect.

In *Zuniga*, the Texas Court of Criminal Appeals had stated, "[t]here is only one question to be answered in a factual sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" 144 S.W.3d at 484 (Tex.Crim.App.2004), *overruled in part by Watson v. State*, 204 S.W.3d 404, 415 (Tex.Crim.App.2006). *Zuniga* then proceeded to rearticulate the factual sufficiency standard of review in terms more specific to the burden of proof required in criminal cases. *See Zuniga*, 144 S.W.3d at 484.

In *Watson*, the Texas Court of Criminal Appeals explicitly overruled *Zuniga* to the extent that it allowed reversal of a jury's verdict when the "greater weight and preponderance of the evidence actually favors *conviction!*" *Watson*, 204 S.W.3d at 417. The court criticized the standards announced in *Zuniga* as allowing an appellate court to reverse a conviction when it simply disagrees with the jury's verdict. *Id.* at 416. "That an appellate court would have acquitted a defendant on the same facts that convinced a rational jury to convict has not ever, by itself, met [the court's] criteria of a 'manifest injustice.' " *Id.*

The *Watson* court then reaffirmed *Clewis*[1] and its progeny by noting that the court has "always held that an appellate court must first be able to say, with some objective basis in the record, that the *great weight and preponderance* of the (albeit legally sufficient) evidence contradicts the jury's verdict before [the appellate court] is justified in exercising its appellate fact jurisdiction to order a new trial." *Id.* at 417.

### In the End, There Can Be Only One

The court stated that the underlying ground rules for review were well articulated in *Cain v. State*, 958 S.W.2d 404 (Tex.Crim.App.1997). *Watson*, 204 S.W.3d at 414. We must remember that a jury has passed on the facts and convicted, and must not order a new trial simply because we disagree with the verdict, but only where a manifest injustice has occurred (though supported by legally sufficient evidence). We must explain exactly how the evidence is too weak to withstand scrutiny, or in which way the conflicting evidence greatly preponderates against conviction, and we must view all the evidence in a neutral light in reaching that conclusion.

The court went on to explain what those terms did not mean: they obviously do not allow reversal simply because a judge would have chosen to acquit had he or she been on the jury. *Id.* at 416.

■ Thus, under *Watson* (and its approval of the earlier analysis utilized in *Clewis, Cain*, and their progeny), we are to view all the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong and manifestly unjust or whether the great weight and preponderance of the evidence is contrary to the verdict, and if we reverse, we must explain in detail how the evidence is lacking or how the contrary evidence so greatly preponderates against conviction. *Watson*, 204 S.W.3d at 417; *see also Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Cain*, 958 S.W.2d 404; *Clewis*, 922 S.W.2d at 134.

■ We now turn to an application of those standards. Drichas was convicted

---

1. *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim. App.1996).

by a jury for evading detention with a motor vehicle. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(1) (Vernon 2003). The jury also found that, during the commission of the offense, Drichas used his vehicle as a deadly weapon. *See* TEX. PENAL CODE ANN. § 12.35(c)(1) (Vernon 2003). Drichas pled true to allegations in the indictment under the habitual felony offenders statute, and the jury assessed his punishment at ninety-nine years' imprisonment. *See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2006). The trial court sentenced Drichas in accordance with the jury's verdict. Drichas appealed, contending, among other things, that the evidence supporting the jury's affirmative deadly weapon finding was legally and factually insufficient.

In our original opinion, *Drichas v. State,* 152 S.W.3d 630 (Tex.App.-Texarkana 2004), *rev'd,* 175 S.W.3d 795 (Tex.Crim. App.2005), we conducted the requisite review of all the evidence, with specific reference to and application of that evidence required by a sufficiency review. After detailing the evidence and applying the sufficiency review, we concluded the evidence presented by the State was both legally and factually insufficient to support the deadly weapon finding. Accordingly, we deleted the finding, and because the ninety-nine-year sentence imposed was well above the twenty-year maximum for the offense without the finding, we re-

manded for a new trial on punishment only.

The Texas Court of Criminal Appeals concluded there was some evidence that the vehicle was a deadly weapon. The court reversed that portion of our opinion and remanded to this Court "for a factual-sufficiency analysis consistent with [its] opinion."

In its own analysis, the Court held that: While the court of appeals is correct in noting that the danger posed to motorists must be actual, and not simply hypothetical, the statute itself does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require appellant to intentionally strike another vehicle to justify a deadly weapon finding. The volume of traffic on the road is relevant only if no traffic exists. *Williams,* 946 S.W.2d at 435–36.[2] The plain language of the statute indicates that a deadly weapon finding will be sustained if the definition of a deadly weapon is met. Capability is evaluated based on the circumstances that existed at the time of the offense. *Williams,* 946 S.W.2d at 435. The statute specifically pertains to motor vehicles, so a deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the

**2.** *Williams* is both analogous to and distinguishable from the instant case. *See Williams v. State,* 946 S.W.2d 432 (Tex.App.-Fort Worth 1997), *pet. dism'd,* 970 S.W.2d 566 (Tex.Crim. App.1998). The *Williams* court was presented with the issue of jury charge error and, therefore, was called on to review the record to determine whether the deadly weapon issue was raised at all by the evidence. *Id.* Pointing out that the record demonstrated there was no traffic on the roadway as Williams drove under the influence of alcohol, the *Williams* court concluded the record did not support the submission of the deadly

weapon issue to the jury. *Id.* at 435–36. Here, we are looking for the same kind of evidence for which the *Williams* court examined the record, but for a different purpose. We are faced with an issue of sufficiency of the evidence to support the jury's affirmative finding that Drichas used a deadly weapon while evading arrest or detention. Our conclusion, therefore, has a different impact in that the record may have raised the issue sufficiently to warrant submission of the issue to the jury and still fail to contain factually sufficient evidence to support the jury's affirmative finding.

defendant when the defendant drove in a dangerous manner. *Mann*, 13 S.W.3d at 92. We do not suggest that a defendant should be charged with using a vehicle as a deadly weapon every time the offense of evading arrest or detention is committed. The determination to seek a deadly weapon finding in those circumstances is a fact-specific inquiry, and the facts will not always support such a finding.

*Drichas*, 175 S.W.3d at 799 (footnote added).

Thus, the court stated that, although the danger to some other motorist must be actual (not just hypothetical), some unspecified degree of proximity is necessary to show that actual danger existed, even though no person was actually endangered. *See id.* As more clearly indicated in its opinion, the court was not suggesting that the mere existence of some other motorist somewhere on the roadway is sufficient to provide the necessary showing that the defendant's use of the vehicle placed that person in actual danger. *See id.* To so construe the court's opinion would eviscerate the requirement that an actual, rather than hypothetical, person be endangered by the way in which the vehicle was used.

We have reviewed the record, as specifically directed, for "evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner." *Id.*[3] Although there is no concrete evidence to that effect, there are two statements from Texarkana, Arkansas, police officer Lieutenant Dwight Mowery that touch on this issue. The following exchange contains these two statements and the context in which the statements were made:

Q. Was there a lot of traffic out?

A. No, there wasn't a lot. *There was some.*

Q. Now, during the course of this route that you took, did you at any time see the truck attempt to run over anybody?

A. No.

Q. Did you see anybody having to swerve to get out of the way or move rapidly to get out of the way of this truck?

A. Other than me there at the store. No, I didn't see anything, other than me, having to avoid an accident.[4]

Q. Did you see the driver in any way point the truck towards someone or some vehicle in an attempt to run them down or harm them in any way?

A. No. I did observe the defendant driving the wrong way on the highway, though.

Q. I understand, but my question was he didn't point his vehicle at any person or any other vehicle in an attempt to run them down.

A. Well, it was certainly pointed in the wrong direction at that point. *I'm not certain of this, but we were meeting some traffic somewhere around that point there.*

Q. You never saw anybody have to swerve to get out of his way?

A. No.

(Emphasis and footnote added.)

Considering only the evidence supporting the affirmative deadly weapon finding, we conclude the evidence is factually insufficient. As Mowery clearly concedes in the second italicized statement, he is un-

---

3. We will, necessarily, set out those facts in detail so that we may then apply the standard to those facts.

4. As noted in our original opinion, this incident occurred before the commission of the alleged offense and therefore fails to qualify as use of a deadly weapon during the commission of the offense charged.

certain even about the presence of other motorists. Second, from his statements, one cannot determine where or when the "traffic" was encountered, or even if it was on the same roadway or on a nearby road. Thus, one can neither ascertain directly, or by inference, proximity of the "traffic," either in time or space to Drichas' vehicle.

The Texas Court of Criminal Appeals' opinion directs us to examine the record for evidence that there were other motorists present at the "same time and place" as the reckless driving occurred. With the exception of the pursuing officers, that evidence simply does not exist in this record.[5] While it is likely that, somewhere in Texarkana, there were other motorists on the roadways in those early morning hours, the record before us does not demonstrate in a factually sufficient manner that Drichas and the pursuing officers ever encountered any motorist in such a way as to place another in actual danger. The evidence that there *may* have been some unknown quantity of traffic at some unknown point, at some unknown time, is conjecture and is inadequate to support the jury's finding. The evidence in this case, as a whole, is so bound by internal qualifications that no reasonable juror could infer that Drichas ever encountered any other motorist in such a way as to place that motorist in actual danger because of the way Drichas was operating his vehicle. We must, therefore, conclude that the evidence is too weak to support the jury's finding.

We continue our review of the record to determine whether the verdict was reached against the great weight and preponderance of the evidence. We look to the testimony of Texarkana, Texas, police officer Jason Woolridge, who took over the primary pursuit when Drichas entered Texas. In the following excerpt, he describes what he saw when first encountering Drichas and Mowery as they drove into Texas:

> Q. ... When you—The place that you were at, were you blocking the intersection in any way?
>
> A. No, ma'am.
>
> Q. You were actually kind of like off the side of the road?
>
> A. I was in the far southbound lane.
>
> Q. There—And I believe you said that the only vehicle that you saw besides the truck was Lieutenant Mowery's?
>
> A. Yes, ma'am.

Woolridge also explains that he did not see any other vehicles until the other police units caught up with him at the point when Drichas turned his vehicle around, several miles after Woolridge took over and near the end of the pursuit:

> Q. And you did not see any other cars whatsoever until you got pretty close up to the turnaround there at the Sulphur River bridge?[6]
>
> A. Yes, ma'am. [Apparently affirming that he saw no other cars.]
>
> Q. So it was just the two of you.

5. We recognize the evidence did show there were police officers in pursuit of Drichas' vehicle, and we reiterate our view, expressed in a footnote in our original opinion, that police officers should not be excluded from the class of persons capable of being endangered by the driver of a fleeing vehicle. However, being mindful of the requirement that an actual, rather than hypothetical, person be endangered, we do not believe evidence of pursuing police officers, without more, establishes such endangerment. Otherwise, a fleeing motorist could be charged with using a vehicle as a deadly weapon virtually every time the offense of evading arrest or detention is committed, and this would be contrary to clear and unequivocal language by the Texas Court of Criminal Appeals in *Drichas*, 175 S.W.3d at 799.

6. Mowery explained that the other Texas officers caught up to Woolridge at approximately the point at which Drichas turned around on Highway 59.

A. That I could see.

(Footnote added.)

When measuring Mowery's general, uncertain statements, that there may have been some traffic at some point, against the evidence to the contrary, we conclude that the contrary evidence is so strong that it greatly preponderates against the deadly weapon finding. *See Watson*, 204 S.W.3d at 414. Woolridge clearly states that he saw no other vehicles at the time he took over the chase into Texas and that he saw no other vehicles until the other units caught up with him near the end of the pursuit.[7]

In light of the higher court's opinion, we note that we do not base this conclusion on the quantity of traffic that may or may not have been encountered. Nor do we measure the probability that another motorist who was present was endangered by Drichas. Rather, we measure solely the sufficiency of the evidence that there was another motorist present on the roadway "at the same place and time" as Drichas when he drove in a reckless manner. Again, the two statements by Mowery regarding the possibility that Drichas and the pursuing officer may have encountered "some traffic" at some point is factually insufficient when measured by the appropriate factual sufficiency standards to allow a jury to conclude the vehicle, as used by Drichas, was a deadly weapon. Further, when viewed in a neutral light and weighed against contrary evidence found in Woolridge's testimony, the jury's verdict is clearly wrong and manifestly unjust, and the great weight and preponderance of the evidence presented contradicts the jury's verdict. The evidence supporting the deadly weapon finding is thus also factually insufficient on that basis.

As pointed out by the Texas Court of Criminal Appeals, reversal of the judgment and remand for a new trial is the proper remedy when a court of appeals finds that evidence is factually insufficient. *Drichas,* 175 S.W.3d at 799.

Accordingly, we reverse the deadly weapon finding, based on the factual insufficiency of the evidence, and remand for a new trial on that issue.[8]

---

7. We note that Woolridge took over the primary position in pursuit of Drichas and that Mowery, as an Arkansas police officer, fell in behind the Texas officer when the Texas officer took over the pursuit. Mowery explains that he was still able to see Drichas' truck throughout the pursuit until the point that Drichas drove into the mobile home park. The record does not indicate otherwise how far back Mowery was from the primary position. So, his position behind the Texas officer may or may not have affected his ability to determine whether they encountered any traffic.

8. Our remand is specifically limited to trial of the issue of the use of a deadly weapon. This automatically necessitates a new punishment trial where the range will depend on the finding made at the retrial of the deadly weapon issue.