In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00021-CR


______________________________




CLEMENT NICHOLAS BOWEN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Criminal Court No. 2


Tarrant County, Texas


Trial Court No. 0926247




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A jury found Clement Nicholas Bowen guilty of driving while intoxicated (DWI). See Tex.
Penal Code Ann. § 49.04 (Vernon 2003). Submitting the issue of punishment to the trial court,
Bowen was found to have been previously convicted of DWI, enhancing the applicable punishment
range for this offense to that of a class A misdemeanor. See Tex. Penal Code Ann. § 49.09
(Vernon Supp. 2006). The trial court then assessed Bowen's punishment at 180 days in jail and a
fine of $750.00; the court, however, suspended imposition of the jail portion of the sentence and
placed Bowen on community supervision for a period of twenty-four months. Bowen now appeals
the jury's verdict, contending the evidence is factually insufficient to support the jury's verdict. More
specifically, he challenges the jury's finding regarding the element of intoxication. We affirm.

I. Standard of Review

 We review a challenge to the factual sufficiency of the evidence using the appropriate
appellate standards set forth by the Texas Court of Criminal Appeals. See Watson v. State, 204
S.W.3d 404 (Tex. Crim. App. 2006); Drichas v. State, 219 S.W.3d 471 (Tex. App.--Texarkana
2007, pet. filed). If the evidence is factually insufficient, we must reverse the conviction and remand
the case for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).

II. Analysis

 In this case, the State had the burden of proving that Bowen was intoxicated at the time the
officer observed Bowen operating a motor vehicle. See Tex. Penal Code Ann. § 49.04(a). Our law
defines the term "intoxicated" as "not having the normal use of mental or physical faculties by reason
of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two
or more of those substances, or any other substance into the body" or, alternatively, by "having an
alcohol concentration of 0.08 or more." Tex. Penal Code Ann. § 49.01(2) (Vernon 2003). The
evidence supporting the State's case consisted of testimony from three witnesses: James Blount (the
arresting officer), Angela Springfield (the county's chief toxicologist), and Scott Axton (a drug
recognition expert). 

 A. Evidence Supporting a Finding of "Intoxication"

 Blount testified that he initially pulled over Bowen's car because he observed it failing to stop
at a stop sign at 8:49 a.m. on February 10, 2004. When he approached Bowen's automobile, Blount
testified he "could smell the strong odor of an alcoholic beverage emitting from the interior of
[Bowen's] vehicle." Blount observed that Bowen's eyes were "red and bloodshot" and that his breath
smelled of alcohol. Blount also indicated that Bowen was slow to respond to the officer's questions. 
When Blount asked Bowen whether he had been drinking, he responded that he had been drinking
"throughout the night" and said "he had been sitting in his vehicle overnight drinking beer." When
Blount later inventoried Bowen's vehicle, Blount found four empty beer cans underneath the driver's
seat, four empty beer cans beneath the passenger's seat, and drug paraphernalia inside Bowen's
cigarette package. 

 Bowen also performed three roadside field sobriety tests. Blount testified that Bowen
exhibited all six of the clues of intoxication during the horizontal gaze nystagmus test. According
to Blount's testimony, Bowen exhibited four of the eight signs of intoxication during the "walk and
turn" test. As to the final test (the "one leg stand" sobriety test), Blount testified Bowen exhibited
three of the four indicators of intoxication. Blount also related that Bowen had swayed slightly
during these field sobriety tests, conduct which Blount believed suggested to him that Bowen was
intoxicated. A sample of Bowen's breath was taken later and the tests on this breath revealed his
breath-alcohol concentration at the time of the test was .072, an amount only slightly below the
statutory presumption amount for alcohol-only impairment. See Tex. Penal Code Ann.
§ 49.01(2)(B).

 Springfield testified that the use of marihuana has a substantial affect on the user's physical
and mental processes, essentially slowing both, and also by impairing a person's perception and
judgment. Springfield opined that marihuana's effects continue for a period of four to eight hours
after ingestion, but that it was possible that those effects could extend beyond that time period,
depending on the quantity of the drug that was ingested by the person. She also told the jury that
marihuana enhances or magnifies the known effects of alcohol on a person's ability to act and react
to stimuli. 

 Axton testified that he had conducted an "eyelid tremor test" on Bowen on the morning of
his arrest. Axton told the jury that this test suggested that Bowen had recently used marihuana. As
a result of Axton's observations during this eyelid tremor test and the other information he had
obtained at the time, Axton concluded Bowen was "absolutely" still under the influence of
marihuana. These other factors which Axton had employed in his assessment included Bowen's own
admission that he "had been smoking marijuana for quite a while," the fact that Bowen's demeanor
at the time Axton met with Bowen was consistent with someone who was still under the influence
of marihuana, and the results of the field sobriety tests that Blount had relayed to Axton. Analysis
of Bowen's urine subsequently confirmed that Bowen had recently used marihuana. 

 B. Evidence Discounting a Finding of "Intoxication"

 The jury also received evidence from which it could have reasonably deduced that Bowen
was not legally intoxicated at the time Blount observed him driving a motor vehicle. For example,
at the time of the initial traffic stop, Bowen did not have his driver's license, yet he was able to
clearly and accurately twice recite his driver's license number from memory to the officer. Blount
had testified that, except for running a stop sign, he did not observe Bowen driving his car in a
manner that suggested the driver was intoxicated, such as slow driving or weaving in the lane of
traffic. Bowen also "immediately" pulled over after the officer initiated his police car's overhead
emergency lights--a consideration which suggests that Bowen's mental and physical faculties were
not impaired, given the reported rapidity of his response. Bowen also did not run into the curb when
he parked the car; it is not uncommon for intoxicated drivers to run into a curb with their cars when
they are pulled over. 

 Bowen's breath test also showed that, at the time of the test, he had a breath-alcohol
concentration of less than the statutory presumption amount for alcohol-only intoxication. Bowen's
breath sample was not taken until some forty minutes after the initial traffic stop, but the State
presented no retrograde extrapolation evidence (evidence that might have suggested Bowen's breath-alcohol concentration was higher at the time he was observed driving the car). Thus, the jury had
no direct evidence before it to suggest that Bowen's breath-alcohol concentration was higher than
.072 at the time of his initial detention.

 Blount also testified that Bowen had repeatedly claimed he had stopped drinking the previous
night around midnight. This would suggest that Bowen had ample time to sober up in the nearly
nine hours between the time that he said he had ceased drinking and the time he was stopped by
Blount. 

 There was also conflicting testimony as to the duration of marihuana's effects on a person's
mental and physical faculties. Springfield testified the effects last anywhere from four to eight hours;
Axton opined that the effects can last up to twenty-four hours. Axton testified that Bowen had said
he smoked his last marihuana cigarette nearly twenty hours before his arrest. If Springfield is correct
on the duration of marihuana's effects, and Axton is incorrect, then it is possible Bowen was no
longer under the influence of marihuana at the time he was operating his motor vehicle.

 We also note that, although Blount testified that Bowen had exhibited four of eight signs of
intoxication on the walk and turn test, and he exhibited three of four signs of intoxication during the
one leg stand test, Blount also failed to specify and describe for the jury the indicia of intoxication
under these tests or which of these things Bowen failed. It is possible that the jury, as the entity that
will ultimately "grade" Bowen's test results, could have agreed with Blount's initial assessment, but
it was given insufficient information or tools with which to make such an assessment. This
distinction could have been important in this case because the jury watched a videotape of the field
sobriety tests. The jurors could have been in a position to be able to evaluate for themselves whether
Bowen actually showed the same signs of intoxication that Blount testified to having found--but
Blount was never asked by the State to specify what those signs of intoxication were. In the absence
of any guidance through the officer's testimony, a different jury might have concluded that the
videotape did not show Bowen to be intoxicated.

 C. The Video

 We have independently reviewed the videotape evidence of the traffic stop that was viewed
by the jury. Blount initially stopped Bowen for failing to come to a complete stop at a stop sign. 
After having been pulled over, Bowen admitted to the traffic violation, but said that his car had
squeaky brakes and that, by rolling through the stop sign, he had hoped to avoid the squeaking. 
Bowen then told the officer that he was driving to work at a Dallas law firm. Bowen also admitted
to the officer that he had spent the previous evening drinking in his car. Some of Bowen's verbal
responses to the officer's questions could be described as seeming sluggish and slurred. Blount
ultimately asked Bowen to exit the vehicle and perform several field sobriety tests.

 During the "walk and turn" test, Bowen made several mistakes: he lost his balance twice,
he lifted his arms away from his sides several times to steady his balance, and he failed to take small
steps during the turning phase of the test. During the "one leg stand" test, Bowen again made several
mistakes: he put his foot down twice during the early portion of the test, and he hopped once to keep
from losing his balance. During both tests, Bowen could be described as swaying slightly, a
condition that suggests he was unsteady on his feet. 

 Since Bowen was present at trial, the jurors were able to observe his movements on the day
of trial and compare them to his conduct as recorded on the videotape of the tests Blount asked him
to perform.

 Blount also had Bowen perform the horizontal gaze nystagmus and vertical gaze nystagmus
tests, but Bowen's reported jerky eye movements (or lack thereof) cannot be seen on the videotape.

 D. Application of Law to Facts

 After reviewing all the evidence both supporting and contradicting the jury's verdict, we
cannot say the great weight of the evidence is against the jury's finding that, at 8:49 a.m. on
February 10, 2004, when he was stopped for the traffic violation, Bowen had lost the normal use of
his mental or physical faculties by reason of the introduction of alcohol and/or marihuana into his
system. The officer found eight empty beer cans in Bowen's car; Bowen initially admitted he had
been drinking all night, but later changed his story to say he had stopped drinking about midnight;
and Axton testified that he "absolutely" believed Bowen was still under the influence of marihuana
shortly after he was arrested. 

 The videotape evidence also supports the jury's verdict. Bowen appears sluggish and has
slurred speech. He made several mistakes during the field sobriety tests. Bowen admits to drinking
the previous night.

 While this evidence is contradicted to varying degrees by other evidence, we cannot say that
such an imbalance in the evidence exists such as to even suggest the jury's verdict was manifestly
unjust. Accordingly, we must overrule Bowen's challenge to the factual sufficiency of the jury's
verdict.

 We affirm the trial court's judgment.



 Bailey C. Moseley

 Justice


Date submitted: June 13, 2007

Date decided: June 14, 2007


Do Not Publish