In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00121-CR


______________________________




SANTIAGO TELLEZ ROSALES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


Hopkins County, Texas


Trial Court No. 0417620




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



I. Factual and Procedural History 


 Santiago Tellez Rosales was convicted in a single jury trial for indecency with a child as to
A.B., and for attempted sexual assault of her sister, C.B. (an adult). Both convictions are on appeal
to this Court. (1) In this appeal, Rosales attacks his conviction for attempted sexual assault. (2) The jury
assessed punishment at six years' imprisonment and a $2,000.00 fine. 

 In a companion appeal, cause number 06-08-00120-CR, also before this Court, Rosales 
appeals his conviction for indecency with a child. In cause number 06-08-00120-CR, Rosales raises 
two of the same issues as he does on this appeal--(1) that we should reverse because Rosales did
not understand his right to remain silent and not to testify and (2) that impermissible testimony was
elicited regarding Rosales' post-arrest silence. Because these two issues are identical in each appeal,
for the reasons stated in our opinion dated this day in Rosales v. State, cause number 06-09-00120-CR, we overrule points of error one and two. 

 In his third point on appeal, Rosales claims that the evidence is factually insufficient to
support the verdict. We affirm the judgment of the trial court on this issue as well. 


II. Factual Sufficiency 

 A. Standard of Review

 Rosales does not complain of the legal sufficiency of the evidence, but does assert that the
evidence is factually insufficient. A factual sufficiency review begins with the presumption that the
evidence supporting the jury's verdict is legally sufficient. Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996). We view all evidence in a neutral light when conducting a factual
sufficiency review. Neal v. State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129
S.Ct. 1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We must
determine if the evidence in support of the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and preponderance of the
conflicting evidence. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); Watson, 204
S.W.3d at 414-15; Drichas v. State, 219 S.W.3d 471, 473 (Tex. App.--Texarkana 2007, pet. ref'd). 
We are mindful of the fact that a jury has already heard the evidence and convicted based on that
evidence. While a factual sufficiency review allows a very limited degree of "second-guessing" the
jury, the review should be deferential, with a high level of skepticism about the jury's verdict before
a reversal can occur. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Watson, 204
S.W.3d at 417.

 Our analysis of whether the evidence is factually sufficient is measured against the elements
of the offense with the same kind of analysis as that applied in the test for a hypothetically correct
jury charge. (3) Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State,
273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The hypothetically correct jury charge "sets out the
law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the particular offense
for which the defendant was tried." Malik, 953 S.W.2d at 240. 

 Under a hypothetically correct charge in this case, the jury was required to find, beyond a
reasonable doubt, that Rosales (1) with the specific intent to commit the offense of sexual assault
of C.B. (2) does an act (3) which amounted to more than mere preparation that tended, but failed to
effect the commission of the offense intended, i.e., that of sexual assault. Tex. Penal Code Ann.
§§ 21.11(a)(1), 22.011 (Vernon Supp. 2009). 

 Sexual assault is committed if a person intentionally or knowingly causes the penetration of
the anus or sexual organ of another person by any means, without that person's consent, causes the
penetration of the mouth of another person by the sexual organ of the actor, without that person's
consent, or causes the sexual organ of another person, without that person's consent, to contact or
penetrate the mouth, anus, or sexual organ of another person, including the actor. 

 B. Analysis 

 The record before us reveals that C.B. lived with her grandmother, who obtained legal
custody of C.B. and her three siblings when C.B. was a child. As C.B. was growing up, she and her
siblings visited their mother on occasional weekends. Rosales married C.B.'s mother when C.B. was
in elementary school, and he was present when C.B. visited her mother. 

 C.B. testified that when she was seventeen, she moved in with her mother and Rosales. 
There was no conflict between Rosales and C.B., except on those occasions when disputes arose
between Rosales and his wife. When C.B. turned eighteen, she withdrew from school, but continued
to live with her mother and Rosales. Approximately one month after having turned eighteen, C.B.
testified that she was awakened one morning by Rosales, who was standing at the end of C.B.'s bed,
wearing only briefs. C.B. testified that Rosales "tried to rape me." Rosales pulled C.B. by the ankles
and tried to get on top of her, but C.B. pushed Rosales, and told him to leave the room. Rosales
continued to attempt to force himself on C.B., while C.B. continued to push Rosales away and
screamed at him to leave. Rosales eventually gave up and left the room. C.B. was distraught, and
called her grandmother's house and spoke with her sister, A.B., to whom she related the events
involving Rosales. Shortly thereafter, the police and A.B. arrived at the Rosales' house and
transported C.B. to the police station to provide a written statement. Rosales was subsequently
indicted, tried, and found guilty of attempted sexual assault. 

 Rosales contends the evidence is factually insufficient to support the verdict because (1) the
investigation did not take place until approximately two months after the incident and (2) there was
no effort to collect any physical evidence of the attempted sexual assault. There were two people
present at the home at the time of the attempted sexual assault--C.B. and Rosales. Teresa Tellez
(Rosales' wife and C.B.'s mother) was out of town at the time. C.B. provided a written statement
of the events on the date of the incident. Later, both C.B. and A.B. were interviewed as a part of the
investigation. No statement was taken from Rosales, at his request. 

 With respect to the question of physical evidence, Andy Chester, the chief investigator for
the Hopkins County Sheriff's Department, testified that because C.B. reported an attempted sexual
assault, rather than a sexual assault, there was no physical evidence to collect. Further, based on
Chester's interview with both C.B. and A.B., Chester would not expect there to be any physical
evidence to substantiate the claim of attempted sexual assault. Neither the investigation nor the lack
of physical evidence detracts from the evidence on which Rosales was convicted.

 The only evidence contradicting C.B.'s testimony was that of Rosales, who testified that on
the date in question, he came home from work, took a shower, and went into the kitchen. Rosales
was sitting in the kitchen when he noticed a police car arrive and park in the yard. When the police
car arrived, C.B. went outside. A.B. was in the car with the police officer. After a few minutes, C.B.
and A.B. left with the police. When his wife arrived home from Dallas, Rosales told her that C.B.
and A.B. left with the police. Rosales testified without apparent explanation that he did not believe
anything was amiss when the police arrived and both C.B. and A.B. left with them. 

 C.B.'s testimony was that Rosales startled her by entering her bedroom wearing only his
underwear briefs, pulled on her ankles, removed her bed covers, tried to get on top of her, and tried
to rape her or force himself on her. It is the task of the jury to evaluate and weigh the evidence; in
doing so, the jury is free to believe or disbelieve part or all of a witness' testimony. Jones v. State,
984 S.W.2d 254, 258 (Tex. Crim. App. 1998). The jury found the testimony of C.B. to be credible,
in spite of Rosales' contradictory testimony. Because the verdict is not manifestly unjust and is not
against the great weight and preponderance of the conflicting evidence, the evidence is factually
sufficient to support the conviction.

 We affirm the judgment of the trial court.

 


 Jack Carter

 Justice


Date Submitted: November 24, 2009

Date Decided: December 11, 2009


Do Not Publish
1. Rosales was granted an out-of-time appeal by the Texas Court of Criminal Appeals. The
appeal of Rosales' conviction for indecency with a child by sexual contact is the subject of a separate
opinion by this Court, issued of even date herewith.
2. Tex. Penal Code Ann. § 15.01 (Vernon 2003).
3. Malik controls "even in the absence of alleged jury charge error." Gollihar v. State, 46
S.W.3d 243, 255 (Tex. Crim. App. 2001). 



font-family: Times New Roman">The only indication in the record that Larson was scared occurred when he saw the bloody knife in
his hand after he had stabbed Williams seven times. Larson testified he was scared then because he
thought he "might have killed a man." Because there is no evidence from which a rational juror
could infer that Larson was incapable of cool reflection at the time of the murder, we overrule
Larson's first point of error. 

(2) A Lesser-Included Offense Instruction Was Not Required

 Larson contends the trial court erred in denying the requested lesser-included offense
instructions on aggravated assault with a deadly weapon or on criminally negligent homicide. 
According to Larson, there was evidence Larson lacked the intent to kill Williams or acted with only
criminal negligence.

 We use a two-part test to determine if a lesser-included offense instruction should be given. 
A defendant is entitled to a charge on a lesser offense if (1) the lesser offense is included within the
proof necessary to establish the offense charged, and (2) there is some evidence that would permit
the jury rationally to find that, if the defendant is guilty, he or she is guilty only of the lesser offense. 
Wesbrook v. State, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000); Rousseau v. State, 855 S.W.2d 666,
673 (Tex. Crim. App. 1993); see Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006). The
evidence must establish the lesser-included offense as a valid rational alternative to the charged
offense. Wesbrook, 29 S.W.3d at 113; Arevalo v. State, 943 S.W.2d 887, 889 (Tex. Crim. App.
1997). Because the second prong of the test is dispositive here, we will focus on that prong.

 As discussed above, the Texas Court of Criminal Appeals has specifically held the inability
of a defendant to remember causing the death of a victim does not entitle the defendant to an
instruction on the lesser-included offense of manslaughter. Schroeder, 123 S.W.3d at 401. The only
significant difference between negligent homicide and manslaughter is that manslaughter requires
a culpable mental state of recklessness, while negligent homicide requires merely criminal
negligence. Compare Tex. Penal Code Ann. § 19.04 (Vernon 2003) with Tex. Penal Code Ann.
§ 19.05 (Vernon 2003). A logical extrapolation of Schroeder would establish a rule that an inability
to remember causing the death of a victim does not entitle the defendant to an instruction on the
lesser offense of negligent homicide. If an inability to remember does not raise a fact issue
concerning whether the defendant acted recklessly, it certainly would not raise a fact issue as to
whether the defendant acted with criminal negligence. 

 Similarly, Larson's inability to remember does not raise the issue of whether he was guilty
of only aggravated assault with a deadly weapon. A person commits aggravated assault with a
deadly weapon if he or she intentionally, knowingly, or recklessly causes bodily injury to another
while using a deadly weapon. See Tex. Penal Code Ann. §§ 22.01(a), 22.02(a) (Vernon Supp.
2006). Thus, in order to be entitled to an instruction concerning the lesser-included offense of
aggravated assault, there must be some evidence from which a rational juror could conclude Larson
lacked the intent to kill. An "inability to recall actually stabbing" the victim does not provide
evidence of a lack of intent to kill. Martin v. State, No. 04-03-00014-CR, 2004 Tex. App. LEXIS
4260, at *7 (Tex. App.--San Antonio May 12, 2004, pet. ref'd) (mem. op., not designated for
publication) (no error in refusing lesser-included offense instruction on aggravated assault); see
Schroeder, 123 S.W.3d at 401. Larson has failed to direct this Court to any evidence that would
allow a rational juror to find that, if Larson was guilty, he was guilty only of aggravated assault with
a deadly weapon or guilty only of negligent homicide. We overrule Larson's second and third points
of error.

 We affirm the judgment of the trial court.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 18, 2006

Date Decided: January 23, 2007


Do Not Publish
1. Williams had seven wounds: a stab wound on the top of his head, a cut on his lip, a slash
mark on the left arm, a stab wound penetrating the right lung, a five and one-fourth inch stab wound
in the upper right chest, a stab wound which pierced the sternum, and a five and one-half inch long
cut on the throat. 
2. There is no requirement that evidence admitted at the guilt/innocence phase of trial be
reoffered during the punishment phase of trial to be considered at punishment. Trevino, 100 S.W.3d
at 238. Evidence on a punishment issue will often come out in the course of the State's own
evidence regarding the circumstances of the offense itself, at the guilt/innocence phase of trial. Id.
3. Most of these cases were decided before the effective date of the 1994 amendment to Section
19.02. Before September 1, 1994, "sudden passion arising from an adequate cause" was an element
of the offense of voluntary manslaughter. See Act of May 23, 1987, 63rd Leg., R.S., ch. 399, 1973
Tex. Gen. Laws 883, 913, amended by Act of May 8, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993
Tex. Gen. Laws 3586, 3614. The current definitions of sudden passion and adequate cause are
identical to those set forth in the former voluntary manslaughter statute. Compare Tex. Penal Code
Ann. § 19.02(a) (Vernon 2003) with Act of May 23, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen.
Laws 883, 913 (former Tex. Penal Code Ann. § 19.03). Because of the similarities between
sudden passion and voluntary manslaughter, prior decisions concerning voluntary manslaughter are
relevant under certain circumstances. See Saldivar v. State, 980 S.W.2d 475, 505 (Tex.
App.--Houston [14th Dist.] 1998, pet. ref'd).
4. In Ray, the defendant was convicted of assault with intent to murder with malice
aforethought. Ray, 515 S.W.2d at 667. The defendant testified the deceased struck him after
uttering, "You black son-of-a-bitch you, I'll knock the damn hell out of you." Id. at 665. The
defendant testified that he did not intend to kill the deceased and that he shot the deceased only
because the decedent had attacked him. Id. The Texas Court of Criminal Appeals held the trial
court erred in refusing the requested instruction of assault with intent to murder without malice. Id.
at 667.


 In Medlock, the defendant was convicted for shooting her husband and a waitress at a club. 
Medlock, 591 S.W.2d at 486. Medlock and the deceased were in the process of a volatile divorce. 
Id. The deceased had previously threatened to kill Medlock and was known to carry a gun. Medlock
testified she had shot at her husband after he stared at her in a threatening manner, came over and
grabbed her by the neck, and said, "Let's go. I'm going to get you." Medlock testified that she was
terrified by the deceased's behavior. The court held that the victim's direct provocation and
Medlock's fear were enough to raise the issue of sudden passion. Id. at 487.

 Ruiz is not even remotely on point. In Ruiz, the defendant shot a bouncer at a club after the
bouncer assaulted him. Ruiz, 753 S.W.2d at 682. The trial court did instruct the jury on voluntary
manslaughter, but failed to instruct the jury that there must be an absence of "sudden passion" in
order to find Ruiz guilty of murder. On appeal, the State did not dispute that the evidence raised the
issue of sudden passion. Id. The Texas Court of Criminal Appeals held the trial court erred because,
at that time, the State was required to prove an absence of "sudden passion." Id. at 683. Because
of the changes in the law and the factual differences between Ruiz and the current case, Ruiz has no
relevance.

 In Perez, Gonzales, Merchant, and Phillips, there was some evidence of both adequate cause
and the accused's agitated state of mind. See Perez, 940 S.W.2d at 823; Gonzales, 838 S.W.2d at
848; Merchant, 810 S.W.2d at 307; Phillips, 700 S.W.2d at 19. 
5. Before 1994, the offense of recklessly causing the death of an individual was referred to as
involuntary manslaughter. See Act of May 8, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen.
Laws 3586, 3614.