**Opinion filed April 19, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00104-CR

_____

## MICHAEL ROSE, Appellant

### V.

## STATE OF TEXAS, Appellee

**On Appeal from the 241st District Court**

**Smith County, Texas**

**Trial Court Cause No. 241-0217-09**

### MEMORANDUM OPINION

Michael Rose was indicted for the offense of felony driving while intoxicated in February 2009. The indictment alleged that, in the course of committing the offense of DWI, appellant had used or exhibited a deadly weapon: a motor vehicle that in the manner and means of its use was capable of causing death or serious bodily injury. Appellant stipulated to two prior convictions for driving while intoxicated. He entered a plea of "not guilty" to the primary offense and contested the deadly weapon issue. A jury convicted appellant and assessed punishment at eight years confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine of $5,000. In a single issue, appellant asserts that the evidence was

legally insufficient to support the finding of use of a motor vehicle as a deadly weapon. We affirm.

*Facts*

In November 2008, Santos Barrera and his wife, Mary, were traveling through Smith County on their way home to College Station from visiting family in Tyler. While stopped at an intersection, Santos heard the sound of screeching brakes just a moment before being rear-ended by another vehicle. Santos and Mary both testified that the braking sound was very short and from the time that appellant put on his brakes to the time that he hit them was a very short period of time. Santos and Mary both testified that the road was dry on the night in question and that the intersection was well-lighted. Santos testified that there was enough time to stop and that he "could see as if it was daylight. That's how much light there is there." Mary testified that the intersection at Highway 69 and Loop 323 is a "pretty big intersection."

Santos was in the center lane, and there were other cars all around him who were also stopped at the intersection. Santos's Chevrolet Silverado was much larger and taller than appellant's vehicle, and as a result, appellant's vehicle went underneath Santos's pickup upon impact. Though the damage to Santos's vehicle was minimal, the impact was hard, and appellant's vehicle was severely damaged: the hood was pushed up to the windshield. Santos was not sure if appellant's vehicle was capable of being driven. Santos's pickup was better equipped to take the impact because of its size relative to appellant's car. Santos testified that, if he had been driving his wife's car, they would have been damaged a lot worse. He testified further that, if his pickup had not been between appellant and the intersection, the incident overall would have been a lot worse.

Santos and appellant's passenger both got out of their respective vehicles. Santos asked the passenger to drive to an adjacent gas station in order to get the vehicles out of the intersection. After pulling over and parking the vehicles, Santos spoke with appellant's female passenger who asked to trade insurance information and then have her son pick them up. Eventually, appellant got out of the vehicle. When appellant got out of the vehicle, he appeared to be very intoxicated. "[H]e couldn't walk at all. He stumbled to the left, like trying to catch his balance, pretty bad." The police were called. Appellant and his passenger switched seats in the car before the police arrived. The female passenger helped appellant around to the other side of the car and then drove the car further down the parking lot to wait for her son.

When Officer Darrell Cook arrived, he spoke to Santos and Mary and then to appellant. Officer Cook noticed that appellant was slurring his speech. He also noticed an odor of alcohol on appellant's breath. Appellant told Officer Cook that he had had a couple of beers. Officer Cook administered the horizontal gaze nystagmus (HGN) test on appellant, and appellant exhibited all six of the HGN clues that indicate intoxication. Appellant was not able to perform other field sobriety tests. The nine-step walk-and-turn was attempted, but appellant was unable to perform it. The one-leg stand was not attempted because Officer Cook felt it was not safe to attempt it. Officer Cook determined that appellant was at fault in the collision and had been driving while intoxicated.

Appellant was arrested and consented to a breath test. The results showed blood alcohol concentrations of 0.146 and 0.143. The legal limit is 0.08. TEX. PENAL CODE ANN. § 49.01(2)(B) (West 2011). Officer Cook testified that a person driving a motor vehicle at that level of intoxication is capable of causing death or serious bodily injury to others. It was his testimony that, in this specific case, appellant was driving and operating his motor vehicle in a manner capable of causing death or serious bodily injury.

*Legal Sufficiency*

Appellant argues that the evidence was legally insufficient to support an affirmative deadly weapon finding. In resolving appellant's sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine if a rational trier of fact could have found, beyond a reasonable doubt, that appellant used his vehicle as a deadly weapon when driving while intoxicated. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010).

The Texas Penal Code defines a "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2011). "To determine whether the evidence supports an affirmative deadly weapon finding in cases involving motor vehicles, we conduct a two-part analysis." *Hilburn v. State*, 312 S.W.3d 169, 177 (Tex. App.—Fort Worth 2010, no pet.) (citing *Sierra*, 280 S.W.3d at 255). We first "evaluate the manner in which the defendant used the motor vehicle during the felony." *Sierra*, 280 S.W.3d at 255. We then "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Id*.

To evaluate the manner in which the defendant used the motor vehicle, we must determine whether the defendant's driving was reckless or dangerous. *Id.* We consider several factors to determine recklessness or dangerousness, such as: (1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle. *Id.* at 255–56. The record here shows that appellant was intoxicated. The evidence established that appellant smelled of alcohol, had trouble speaking, and could not walk or hold himself upright. He had to be helped to the passenger seat by his companion. His level of impairment was so severe that it precluded the full battery of field sobriety tests. His breath test, conducted after some time had passed after the collision, revealed a blood alcohol concentration of over one and one-half times the legal limit. Officer Cook testified that, based on his experience, a driver operating a vehicle while intoxicated at nearly one and one-half times the legal limit is capable of causing serious bodily injury or death. The evidence also shows that appellant failed to control his vehicle, given that he crashed into Santos's stopped vehicle at a crowded and well-lighted intersection. *See, e.g., Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) (finding that "the inference" that an intoxicated driver caused an accident "is even stronger when the accident is a one-car collision with an inanimate object"). The very short amount of time between appellant's braking and the impact tends to show that the vehicle was being driven recklessly. *See Sierra*, 280 S.W.3d at 256 (concluding that a rational factfinder was permitted to conclude that Sierra was driving recklessly or dangerously while intoxicated because Sierra could have avoided the collision, but he failed to brake even though he had ample opportunity to stop before hitting the car). Here, the road was dry; the intersection was a major one and was well-lighted; and numerous other vehicles had already reached a complete stop. The evidence was sufficient to support a finding that appellant's driving was reckless or dangerous.

We must now turn to the second part of the *Sierra* test—whether the motor vehicle could cause death or serious bodily injury. *Sierra*, 280 S.W.3d at 255. To sustain this finding, several Texas courts have held that there must be evidence that others were actually endangered in the accident. *See Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); *Drichas v. State*, 219 S.W.3d 471, 476 (Tex. App.—Texarkana 2007, pet. ref'd); *Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997, *rev'd on other grounds*, 970 S.W.2d 566 (Tex. Crim. App. 1998). A hypothetical potential for danger is not sufficient. *Cates*, 102 S.W.3d at 738. We must "examine the record for evidence that there were other motorists present at the 'same time and

place' as the reckless driving occurred." *Drichas*, 219 S.W.3d at 476; *see Williams*, 946 S.W.2d at 435–36 (holding that a deadly weapon finding must be supported by evidence that "there was someone present who was placed in danger of serious bodily injury or death").

The record here shows that there were other motorists present at the same time and place as the reckless driving occurred and that, while there were no injuries, others were actually endangered in the accident. Appellant rear-ended a vehicle with two occupants inside. Santos testified that it was only the size and height of his pickup that protected his vehicle and its occupants. The disproportionate sizes of the vehicles caused appellant's vehicle to rebound instead of crushing Santos's vehicle. There were numerous other vehicles at the intersection, with varying numbers of occupants. It was Santos's testimony that, had his pickup not been between appellant and the cars in front of him, and the middle of the intersection, the damage could have been a lot worse. The impact from appellant's car on a smaller vehicle would have caused serious harm to that smaller vehicle's occupants, and the smaller vehicle could have been pushed into oncoming traffic. Furthermore, appellant's own vehicle was damaged dramatically, and he had a passenger in the front seat with him. The evidence shows that appellant's female passenger was undoubtedly placed in danger of serious bodily injury. The evidence also shows that the risk posed to those around appellant was real, not merely hypothetical.

Viewing the evidence in a light most favorable to the prosecution, a rational jury could have determined beyond a reasonable doubt that appellant used his vehicle in a manner capable of causing death or serious bodily injury. We hold that the evidence was legally sufficient to support the jury's verdict. Appellant's sole issue on appeal is overruled.

The judgment of the trial court is affirmed.

JIM R. WRIGHT
CHIEF JUSTICE

April 19, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.