**Michael Thomas WILLIAMS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–96–391–CR.**

Court of Appeals of Texas,
Fort Worth.

April 17, 1997.

Robert Ford, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Assistant Criminal District Attorney, Helena F. Faulkner, Steve Wells, Assistant Criminal District Attorney, Fort Worth, for Appellee.

Before DAY, BRIGHAM and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

A jury convicted Michael Thomas Williams of the felony offense of driving while intoxicated and felony repetition. Before trial, the State notified Williams that it would seek a deadly weapon finding. He appeals on the sole point of error that in the punishment phase of trial, the court erred by charging the jury on the deadly weapon issue. During the closing argument on punishment, the State argued that under the facts of this case, the motor vehicle Williams drove during the offense was a deadly weapon. The jury agreed and sentenced Williams to 15 years in prison. The appeal does not challenge the jury's verdict that Williams is guilty of the felony offense of driving while intoxicated or the felony repetition. We affirm the conviction, but because the State did not prove that at the time and place of the DWI the vehicle was being used in a manner capable of causing death or serious bodily injury to anyone, we sustain the point of

error and reverse and remand for a new trial on punishment only.

## The Offense

After midnight on January 22, 1995, a Texas Department of Public Safety trooper in a patrol car saw Williams driving a pickup truck on Interstate 35 at a speed of five to ten miles per hour and arrested him for driving while intoxicated. The trooper testified that after he followed the Williams truck for some distance, he turned on the flashing lights on his patrol car and drove alongside the truck. He watched it roll to a stop in a traffic lane of the highway and saw Williams "slumped over, passed out or asleep" in the truck's driver's seat. The trooper stopped the patrol car on the highway and walked to the driver's side of the truck. He turned off the truck's engine and saw that Williams was "very dazed and out of it." The trooper noticed a strong odor of alcoholic beverage, both on Williams and inside the truck. Williams was unable to keep his balance during a walk-and-turn field sobriety test and refused to perform other tests for the trooper. The trooper took Williams to the Tarrant County intoxilyzer room at the Fort Worth police station, where Williams was not cooperative, had to be restrained three separate times, and would not submit to a breath test. After he was placed in a jail cell, Williams hit the cell windows until jailers restrained him. The inventory of Williams' truck included two twelve-packs of beer and an open, half-empty can of beer.

## The Deadly Weapon Charge

A "deadly weapon" is defined as:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PENAL CODE ANN. § 1.07(a)(17)(A), (B) (Vernon 1994). The court's charge on punishment included the statutory definition of "deadly weapon" and also defined "serious bodily injury" as an injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. The charge asked the jury "[d]o you find beyond a reasonable doubt that the Defendant, Michael Thomas Williams, used or exhibited a deadly weapon, if he did, during the commission of the felony offense of driving while intoxicated?" The jury answered, "[w]e do."

Williams insists that as a matter of law the truck he was driving at the time of his arrest was not a "deadly weapon" because his act of driving while intoxicated did not involve serious bodily injury or death. Williams emphasizes the trooper's testimony that at the time and place of the offense, no other motorists were there, and Williams argues that he and his truck were no danger to anyone. The gist of the State's position is that even though a motor vehicle is not a deadly weapon per se, and even though the DWI did not involve serious bodily injury or death, once the jury found Williams guilty of felony DWI, the court was entitled to charge the jury to consider whether the vehicle used to accomplish that felony was a deadly weapon. The State's position takes for granted that the evidence shows beyond a reasonable doubt that in the manner of its use or intended use during the DWI, the vehicle was capable of causing death or serious bodily injury.

## The Trooper's Testimony

Williams' truck did not collide with any person or object. The trooper testified that when he followed Williams' truck and stopped beside it at approximately 12:25 a.m. in a traffic lane of Interstate 35, near its merger with southbound U.S. Highway 287, no vehicles were present other than Williams' truck and the trooper's patrol car. The trooper told the jury that when his patrol car and Williams' truck were parked in the traffic lanes, "[w]e just about had [the Interstate] shut down at that point." He moved quickly to get Williams out of the truck and onto the side of the road because "[w]e didn't know if anyone else would be coming southbound to run over myself or [Williams]." The trooper described the blockage of the Interstate as "a very hazardous situation" and also stated his opinion that the truck was

a deadly weapon because Williams had driven it so slowly on the Interstate. But when the trooper was asked on cross-examination to agree that at the time Williams was driving while intoxicated there was no one on the highway for the Williams truck to threaten or endanger, the trooper conceded that was true. On re-direct examination, the trooper told the jury that he felt his own safety was threatened because the truck was stopped in the highway and he had to get out of his patrol car, also on the highway, in order to investigate Williams' condition, and that the situation was a danger to oncoming drivers. Nevertheless, there was no testimony that any motorists other than police patrol cars ever came upon the scene.

The trooper's testimony establishes that although he saw Williams driving while intoxicated and arrested him for the offense, the trooper took precautions for his own safety, as he was trained to do, and was not actually endangered. There is no question that Williams was guilty of the felony offense of driving while intoxicated, but the trooper's testimony that he and others could have been endangered by Williams' conduct *if* others had been present is only hypothetical and not evidence of actual danger.

### The Vehicle's Use

The State asserts correctly that a motor vehicle can be shown to be a deadly weapon where the evidence is that because of the manner of the vehicle's use or intended use, it was *capable* of causing death or serious bodily injury. Besides the Penal Code's definition of deadly weapon, the State relies on *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex.Crim.App.1992). *Ex parte McKithan*, however, involved involuntary manslaughter caused by driving while intoxicated. In this case, the vehicle driven by the intoxicated driver did not involve death or serious bodily injury, or even property damage. The State further maintains that the bare *possession* of a deadly weapon *while committing a felony* may properly be construed as "using" or "exhibiting" a deadly weapon if the possession of it facilitates the associated felony or immediate flight afterward. *See Tyra v. State*, 897 S.W.2d 796, 797 (Tex.Crim.App.

1995); *Patterson v. State*, 769 S.W.2d 938, 940 (Tex.Crim.App.1989). Indeed, the Court of Criminal Appeals has confirmed that in theory, all felonies are susceptible to an affirmative finding that a deadly weapon was used or exhibited during the commission of the crime. *Patterson*, 769 S.W.2d at 940. *Patterson* also embraces the principle that even the bare possession of a deadly weapon while committing a felony constitutes the *use* of that weapon during the felony, if that possession facilitates the felony. *Id.* at 941; *Tyra*, 897 S.W.2d at 797.

The State reasons that because a statute forbids judge-ordered community supervision for a defendant who has used or exhibited a deadly weapon while committing a felony, or fleeing afterward, that statutory denial demonstrates the clear legislative intent to allow an affirmative finding of the use of a deadly weapon whenever an accused is found guilty of *any* felony offense, if the weapon is shown to have facilitated the commission of the felony. *See* TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.1997). The legislative intent behind the enactment of that statute has been a subject of divergent analyses by members of the Court of Criminal Appeals. *See Tyra*, 897 S.W.2d at 799 (majority op. by Meyers, J.; Maloney, J., concurring at 802–05; Clinton, J., dissenting at 808, 811).

At oral argument on this appeal, Williams countered that *Patterson*'s principles have not been viable since the United States Supreme Court decided *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The Supreme Court consolidated *Bailey* with *Robinson v. U.S.*, because each case involved a prosecution for the alleged use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Bailey was charged and convicted of violating section 924(c)(1) because the police had found a loaded pistol inside a bag in the locked trunk of his car after arresting him for possession of cocaine that they had found by searching the car's passenger compartment. Robinson was convicted of violating section 924(c)(1) because an unloaded, holstered firearm was found locked in a trunk in her bedroom closet

after she was arrested for drug-related offenses. The United States Supreme Court reversed and remanded both convictions, holding that bare possession of the firearm is not enough to sustain a conviction for *using* a firearm in the context of section 924(c)(1). *Id.*, at ——, 116 S.Ct. at 506. For the United States to prove that an accused actually *used* a firearm in committing the predicate crime, the evidence must prove that during or in relation to the crime, the accused *actively employed* a firearm. *Id.*, at ——, 116 S.Ct. at 509. The Supreme Court held that under section 924(c)(1), the "use" of a firearm means that there must be evidence that the weapon was "actively employed" in the crime by brandishing, displaying, bartering, striking with, firing, attempting to fire, or making reference to the firearm in the accused's possession. *Bailey*, —— U.S. at ——, ——, 116 S.Ct. at 505, 508.

## Analysis

We will not address Williams' assertion that the principles of *Bailey* should prevail over those of *Patterson* because we are not persuaded that either *Bailey* or *Patterson* is dispositive of Williams' sole point of error. This appeal is not a firearm case, as was *Bailey.* In *Bailey,* the question was not whether the firearms were deadly weapons, the question was whether those firearms were *used* (actively employed) in the commission of drug-related offenses. *Patterson* was a firearm case, affirmed when the Court of Criminal Appeals agreed with the court of appeals that Patterson *used or exhibited* a firearm while committing a drug-related felony because the firearm protected and facilitated Patterson's care, custody, and management of the contraband.

In Texas, section 1.07(a)(17)(A) leaves no doubt that a firearm is a deadly weapon. But under section 1.07(a)(17), a motor vehicle is not a deadly weapon unless the record compels the conclusion that the vehicle was *used* in a manner that made it a deadly weapon. *See, e.g., Tyra,* 897 S.W.2d at 798; *McKithan,* 838 S.W.2d at 561. Each of those cases involved involuntary manslaughter with a motor vehicle driven by an intoxicated person. In *Tyra*'s majority opinion, Judge

Meyers writes that mere possession of a weapon without putting it to any use or purpose whatsoever is not the same as *using* the weapon. *Tyra,* 897 S.W.2d at 798. However, driving an automobile is *using* it, and driving it in a manner capable of causing death or serious bodily injury is *using* it as a deadly weapon. *Id.*

In Williams' case, the evidence is clear that he *possessed* the truck and also *used* the truck during the felony of driving while intoxicated. By doing that, he both *used* and *actively employed* the truck while committing the DWI felony. The threshold question is whether, upon the evidence in the record, the truck Williams drove should be classified as a deadly weapon because of the manner in which he used or actively employed it while committing the felony. An affirmative answer to that question requires proof that in the manner of its use or intended use during the DWI, the truck was *capable* of causing death or serious bodily injury.

To determine whether in the manner of its use or intended use Williams' truck was "capable" of causing death or serious bodily injury, that "capability" must be evaluated in light of the facts that actually existed while the felony DWI was committed. In other words, the "capability" must be evaluated in light of what did happen rather than the conjecture about what *might* have happened if the facts had been different than they were.

 We conclude that to find the truck "capable" of causing death or serious bodily injury requires evidence that when the DWI offense occurred, there was someone present who was placed in danger of serious bodily injury or death. Testimony in the record includes details of Williams' DWI offense and conduct from the time the trooper first observed Williams driving the truck until Williams stopped it in the highway; during the time the truck was parked in the highway; and until the truck was moved off the road and Williams was taken to jail in a patrol car. Yet, there is no evidence that any other motorist was on the highway at the time and place that Williams drove in .an intoxicated condition or that any other motorist (besides other troopers the arresting

officer called for assistance) ever came upon the scene or encountered danger from Williams' truck or from other traffic because the truck was parked in the highway.

We do not foreclose the possibility that despite the absence of death or serious bodily injury, a case may arise with facts that, if shown by admissible evidence, would support a finding in conjunction with a felony DWI conviction that a motor vehicle used was a deadly weapon. But, on the facts in evidence in this case, the State did not prove that in the manner of its use, or intended use, Williams' truck was capable of causing death or serious bodily injury and therefore was a deadly weapon. Accordingly, there should not have been a deadly weapon issue in the jury charge on punishment. Williams' sole point of error is sustained. The conviction for felony driving while intoxicated and felony repetition is affirmed, and we reverse and remand for a new trial on punishment only.