# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00621-CR

**Larry Collins, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 3010161, HONORABLE FRANK W. BRYAN, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Larry Collins appeals from his conviction for aggravated assault with a deadly weapon. *See* Tex. Pen. Code Ann. § 22.02 (West 2003). After the jury found him guilty of the offense, it assessed punishment at imprisonment for nine years in the Texas Department of Criminal Justice-Institutional Division. In three issues on appeal, appellant contends that the evidence was factually and legally insufficient to prove aggravated assault because the State did not prove that a deadly weapon was used and that a mistrial should have been granted based on an improper prosecutorial comment during the punishment phase. We affirm the conviction.

## Factual and Procedural Background

Officer Chris Gray of the Austin Police Department testified that he answered a police call in January 2002 that reported an assault at an apartment complex in North Austin. He found Ana Angulo, the victim of the attack, sitting on a stairwell. She appeared to be "in a significant amount of pain," and was afraid, fearful, and injured. He testified that her hair was matted down with blood and her shirt was soaked with blood. She told him that she had been going to do her laundry. A black male came out from behind the laundry-room door holding a "dark-colored baseball bat." He swung the bat over his head and hit her in the head; as he swung again, she tried putting up her hands to block the blow. They struggled; she was able to escape, running to her own apartment. Family members called the police with a description of the assailant, who was apprehended in the area. He was brought back to the apartment complex. When Angulo saw him, she began crying hysterically and identified him as the attacker. Gray also testified that based on his training as a police officer, in his opinion the object used was a deadly weapon.

Ana Angulo testified. She said it was hard to open the door to the laundry room, as if something were behind it. She described the attack and how she tried to cover her head. She said the attacker had a bat in his hand. She said that when he hit her it felt like a bat because it was hard. At another point she described the object as a metal stick or pipe. She said that during the attack, she thought he wanted to kill her.

Rebecca Spellman authenticated the medical records of the victim. The victim was treated and released. Her injuries were described as abrasions, a scalp laceration, a hematoma, and

2

a deep bruise on her face, but were not life-threatening. The emergency room physician's notes indicated that he did not believe that Angulo had suffered a serious head injury.

## Discussion

### *Deadly Weapon*

In his second and third points of error, appellant contends that the evidence is factually and legally insufficient to support his conviction. In order to prove aggravated assault with a deadly weapon, the State must prove an assault and that the assault involved the use of a deadly weapon. Tex. Pen. Code Ann. § 22.02(a)(2) (West 2003); *Teal v. State*, 543 S.W.2d 371, 373 (Tex. Crim. App. 1976). Appellant argues that the State failed to prove the deadly weapon element.

The standard for reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996). All the evidence that the jury was permitted to consider properly or improperly must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). On appeal, we do not reevaluate the credibility of the witnesses or realign, disregard, or weigh the evidence. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992).

To determine factual sufficiency, we view the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (citing *Clewis v. State*, 922

S.W.2d 126, 129 (Tex. Crim. App. 1996)). We must review the evidence weighed by the jury tending to prove the existence of the elemental fact in dispute and compare it to the evidence tending to disprove that fact. *Id*. The appellate court may find either that the State's proof of guilt was so obviously weak as to undermine confidence in the jury's determination or that the finding of guilt was against the great weight and preponderance of the evidence. *Id*. at 11. When the defendant proffers contrary evidence, we consider whether the proof of guilt, although adequate if taken alone, is greatly outweighed by the defendant's evidence. *Id*. However, a factual sufficiency review must be appropriately deferential to avoid intruding on the fact finder's role as the sole judge of the weight and credibility of the evidence. *Id*. at 7; *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). Unless the available record clearly indicates a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give to contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor. *Johnson*, 23 S.W.3d at 8. We are not free to reweigh the evidence, but must exercise our jurisdiction only to prevent a manifestly unjust result. *Jones*, 944 S.W.2d at 648.

One definition of a deadly weapon is "anything that in its manner of use or intended use is capable of causing death or serious bodily injury." Tex. Pen. Code Ann. § 1.07(a)(17)(B) (West 2003). Under this definition, the evidence must establish that the object was capable of causing death or serious bodily injury as used. *Walker v. State*, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995); *Holder v. State*, 837 S.W.2d 802, 807 (Tex. App.—Austin 1992, pet. ref'd). A variety of factors may be considered in deciding whether a weapon qualifies as a deadly weapon. The nature and severity of the wounds inflicted may be considered. *Garcia v. State*, 17 S.W.3d 1, 4-5 (Tex.

4

App.—Houston [1st Dist.] 1999, no pet.). Other factors include the physical proximity between the victim and the object, the weapon's innate ability to inflict death or serious injury, and the manner in which the defendant used the weapon. *Bailey v. State*, 46 S.W.3d 487, 491-92 (Tex. App.—Corpus Christi 2001, pet. ref'd). No one factor is determinative. *Id.* The fact that a victim might not know exactly what the weapon was does not preclude a deadly weapon finding. *See Moore v. State*, 740 S.W.2d 883, 885 (Tex. App.—Tyler 1987, no pet.).

A deadly weapon finding is appropriate when a defendant uses an object in such a way as to threaten deadly force. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). However, the possibility of serious bodily injury or death must be more than merely hypothetical. *See Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997), *rev'd on other grounds*, 970 S.W.2d 566, 566 (Tex. Crim. App. 1998). Bats and pipes have been found to be deadly weapons. *McElhaney v. State*, 899 S.W.2d 15, 16-17 (Tex. App.—Tyler 1995, pet. ref'd) (pipe; testimony of victim as to repeated blows and victim's opinion that pipe was capable of causing death or serious bodily injury enough to show deadly weapon); *Fugett v. State*, 855 S.W.2d 227, 229 (Tex. App.—Fort Worth 1993, no pet.) (victim struck in groin with baseball bat; police officer's testimony that bat was a deadly weapon as used sufficient even though victim did not suffer serious bodily injury).

In this case, Angulo testified that the assailant used a bat or pipe. She described how he swung the bat over his head with both hands and brought it down on her head. She tried to protect her head, and suffered blows to her arms. She said that she was afraid that he was trying to kill her. Police officer Gray testified that the weapon was capable of causing serious bodily injury.

5

Appellant focuses on variances in Angulo's identification of the object used. However, the inability to identify the item exactly is not determinative. *See Moore*, 740 S.W.2d at 885 (victim identified weapon as gun, was actually knife). Appellant also argues that Angulo was not injured severely enough to demonstrate that the object used was a deadly weapon. Although the possibility of serious injury or death must be more than hypothetical, the State must prove only that the object was *capable*, in the way in which was used, of causing serious injury or death. *See Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002) (testimony that BB gun capable of inflicting serious bodily injury; not necessary for State to show was actually loaded). It is not necessary that serious injury or death actually occur to establish an object as a deadly weapon. *See Fugett*, 855 S.W.2d at 229. Angulo's description of the appellant as raising his hands over this head and then swinging down at her head would allow the jury to draw a reasonable inference that appellant was attempting to do as appellant feared—strike a blow forceful enough to kill her. Based on Angulo's and Gray's testimony, a rational jury could have found beyond a reasonable doubt that a deadly weapon was used. *See Jackson*, 443 U.S. at 319.

When we examine the evidence in a neutral light, we conclude that it was factually sufficient as well. Some confusion in the description of the object as to whether it was a bat or a pipe does not negate the fact that the object fell into the general category of hard blunt objects capable of causing serious injury when used to strike another person on the head. Nor does the fact that Angulo was able to escape the attack short of suffering death or a coma, render the possibility of serious injury from blows to the head merely hypothetical. The verdict is not against the great

6

weight and preponderance of the evidence. *See Johnson*, 23 S.W.3d at 11. We overrule appellant's second and third issues.

### *Improper Comment*

In his second point of error, appellant claims that the prosecution improperly commented on appellant's failure to testify through a question asked to a probation officer at the punishment stage of trial. The question asked whether an admission of responsibility for his conduct is an important factor in considering whether a defendant is a good candidate for probation. Appellant objected; the trial court sustained the objection and instructed the jury to disregard. The judge declined to grant a mistrial, however. Appellant contends that the question referred to his failure to testify because that would be the way in which he would admit remorse.

The failure of an accused to testify may not be the subject of comment by the prosecution. *Montoya v. State*, 744 S.W.2d 15, 34 (Tex. Crim. App. 1987) (op. on reh'g); *Lopez v. State*, 793 S.W.2d 738, 741 (Tex. App.—Austin 1990, pet. dism'd). Such a comment is in violation of the privilege against self-incrimination contained in the Fifth Amendment to the United States Constitution and in article I, section 10 of the Texas Constitution. *Griffin v. California*, 380 U.S. 609 (1965); *Allen v. State*, 693 S.W.2d 380, 381 (Tex. Crim. App. 1984) (op. on reh'g). Further, comments by the prosecutor referring to a defendant's failure to testify also violate article 38.08 of the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.08 (West 1979); *Montoya*, 744 S.W.2d at 34. A violation occurs when a prosecutor makes remarks that are manifestly intended or are of such character that the jury would naturally and necessarily consider them to be a comment on the accused's failure to testify. *Allen*, 693 S.W.2d at 385. The

prosecutor's remarks must be viewed from the standpoint of the jury, and there must be a clear implication that the language used referred to the accused's failure to testify. *Dickinson v. State*, 685 S.W.2d 320, 323 (Tex. Crim. App. 1984). It is not sufficient that the language might be construed as an implied or indirect allusion to the defendant's failure to testify. *Montoya*, 744 S.W.2d at 35. In applying this standard, the facts and circumstances of each case must be analyzed to determine whether the language used was improper. *Id*.

At the *punishment* stage of the trial, appellant called Maria Anderson, a probation officer for Travis County. Appellant slowly and carefully elicited the large number of possible conditions of probation, including the fact that violation of any one condition could result in revocation of probation and jail. The prosecutor then asked questions about the factors that would be considered in determining whether a hypothetical defendant would be a candidate for probation. The State then asked whether a report was compiled to assist in making the probation recommendation. The State then asked: "And would you agree with me that one of the most important things that a defendant can do in order to obtain probation is to admit the conduct that he has been charged with?" Appellant objected; the objection was sustained and the jury instructed to disregard. The court overruled appellant's motion for mistrial. The State then asked some general questions about the level of supervision provided to probationers. The State also introduced multiple previous non-felony convictions.

The prosecutor's question was not an impermissible comment on appellant's failure to testify. The question was asked in the context of a series of questions trying to determine what factors were considered in making a recommendation for probation—not in the context of asking

8

whether *appellant* was a suitable candidate. At the point at which the State asked the question, appellant had just been found guilty by the jury. The State was cross-examining a defense witness on punishment. The defense had not yet rested. At the point at which the State made the comment, appellant still had the ability to testify, and so the remark was not a direct comment on his failure to testify during punishment.

Even if error occurred, it was cured. Generally, error associated with an improper comment, including a comment on a failure to testify, can be cured by an instruction to disregard. *Long v. State*, 823 S.W.2d 259, 269 (Tex. Crim. App. 1991). Reversal is required only if the argument was extreme, manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision such that it is so inflammatory that an instruction to disregard cannot cure its prejudicial effect. *Trevino v. State*, 979 S.W.2d 78, 80 (Tex. App.—Austin 1998, pet. ref'd).

In this case, the question asked was not extreme. This question was one of a series of questions designed to find out under what circumstances this probation officer thought probation should be granted in general. It was similar to a comment made during jury argument found to be cured in *Gardner v. State*, 730 S.W.2d 675 (Tex. Crim. App. 1987). In *Gardner*, the prosecutor said: "[W]e've heard a lot from the Defense and we've heard a lot from everything else in this courtroom but we haven't heard anybody say that they are truly sorry about what happened to [the victim]." 730 S.W.2d at 700. The Court of Criminal Appeals held that, although the remark there could be considered a comment on the defendant's failure to take the stand and personally admit remorse, any harm that may have resulted was cured by the prompt instruction to disregard. *Id*. We conclude that

if the question was an erroneous comment on appellant's failure to testify, it was cured by the prompt instruction to disregard. We overrule appellant's first issue.

## Conclusion

We have overruled appellant's three issues. We affirm the conviction.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   August 29, 2003

Do Not Publish