# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00850-CR

**Timothy Richard Woodall, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 03-401-K368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Timothy Richard Woodall of felony driving while intoxicated and found that he used the vehicle he was driving as a deadly weapon during the commission of the offense. The trial court sentenced Woodall to ten years in prison. In two issues on appeal, Woodall contends that (1) the evidence is legally insufficient to support the jury's deadly weapon finding, and (2) the trial court erred by denying his requested jury instruction explaining the phrase "capable of causing death or serious bodily injury" as it pertains to the definition of "deadly weapon." We affirm.

At approximately 11:00 p.m. on the evening of February 8, 2003, Larry Meyer was driving home on US 183 towards Cedar Park. He testified that he saw "a vehicle come off of McNeil and Spicewood Springs exit and hit some of the barrels off to the side that merged onto 183 and then almost hit the front of me." Meyer then observed the vehicle "[c]ome back over into the

lane that he was at and then hit the curb on the right-hand side of the vehicle a couple of times, just swerving back and forth into it." At this point, Meyer called 911 to report the vehicle because "it was obvious that something was wrong" and, according to Meyer, "there was no control of the car. I mean somebody was going to get hurt, whether [the driver of the vehicle] or somebody else." While he was on the telephone with 911, Meyer saw the vehicle, with its brakes "locked up," skid to a stop in the middle of an intersection where the light was red. After stopping in the middle of the intersection, the vehicle continued to travel down the access road.

Meyer followed the vehicle to a restaurant at US 183 and Highway 620 and followed the driver, later identified as Timothy Woodall, inside the restaurant. Once inside the restaurant, Meyer approached Austin Police Department officers Robert Mitchell and Greg Thornton, who happened to be eating there, and explained the situation to them. Meyer then identified Woodall to Officer Mitchell as the driver of the vehicle that had almost hit him.

Officer Mitchell testified that he approached Woodall, who was sitting on a bench near the entrance of the restaurant, and "explained to him that somebody had seen him driving his car northbound on 183, driving erratically, striking barrels, striking the curb, that kind of thing." Woodall initially denied that he had been driving and claimed that he had taken a taxi to the restaurant. Upon further questioning, however, Woodall admitted that he had driven "his SVU" to the restaurant. Officer Mitchell testified that, during their conversation, Woodall had difficulty standing, smelled of alcohol, and slurred his speech. Woodall eventually told Officer Mitchell that he had consumed six beers earlier that evening.

Outside the restaurant, Officer Mitchell inspected Woodall's vehicle. He noticed scrapes on the left front bumper "that may have been consistent with hitting the traffic barrels that Mr. Meyer had described." Officer Mitchell then administered field sobriety tests to Woodall, and concluded that Woodall exhibited signs of intoxication. At this point, Officer Mitchell determined that Woodall "had lost the normal ability to function both mentally and physically due to the introduction of alcohol into his system" and arrested Woodall for driving while intoxicated.

Woodall was indicted for felony driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West 2003) (driving while intoxicated), § 49.09 (West Supp. 2008) (enhanced offense). The indictment included a penalty paragraph alleging that Woodall had previously been convicted of felony driving while intoxicated as well as a notice alleging that Woodall had used a motor vehicle as a deadly weapon during the commission of the charged offense. On October 10, 2005, Woodall was tried before a jury on his plea of not guilty. The State presented multiple witnesses, a videotape from the night of the arrest, and Woodall's criminal record. After the close of evidence, Woodall submitted a proposed jury instruction explaining the phrase "capable of causing death or serious bodily injury" as it pertained to the statutory definition of "deadly weapon." The trial court denied the proposed instruction. The jury returned a guilty verdict and made an affirmative finding that Woodall used his motor vehicle as a deadly weapon during the commission of the offense. The trial court assessed punishment at ten years in prison.

In his first issue on appeal, Woodall contends that the evidence is legally insufficient to support the jury's finding that he used his vehicle as a deadly weapon during the commission of the offense. We review the record to determine whether, after viewing the evidence in the light most

3

favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the vehicle was used as a deadly weapon. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003).

A deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2008). An automobile can be a deadly weapon if it is driven so as to be capable of causing death or serious bodily injury. *Cates*, 102 S.W.3d at 738. The "capability" of causing death or serious bodily injury must be evaluated in light of the facts that actually existed while the felony DWI was committed, rather than conjecture about what might have happened if the facts had been different. *Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997), *rev'd on other grounds*, 970 S.W.2d 566 (Tex. Crim. App. 1998); *see also Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005) (capability is evaluated based on the circumstances that existed at the time of the offense). There must also be evidence that others were actually endangered by the defendant's use of the vehicle, and not "merely a hypothetical potential for danger if others had been present." *Cates*, 102 S.W.3d at 738 (citing *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001)).

Several courts have found evidence legally sufficient to sustain a deadly weapon finding in felony DWI cases when there are specific facts demonstrating that others were actually endangered by the defendant's use of a motor vehicle. For example, in *Mann v. State*, the court found evidence that the defendant "almost hit another vehicle head-on" when he drove across the center line of the highway and forced an oncoming vehicle to take "evasive action" legally sufficient to support a deadly weapon finding. 13 S.W.3d at 92. In

4

*Drichas v. State*, the court found evidence that the defendant drove the wrong way down a highway with "some traffic" legally sufficient to support a deadly weapon finding despite testimony from a police officer that he did not see "any motorists swerve to avoid hitting [the defendant's truck]." 175 S.W.3d at 798. In *Ochoa v. State*, the court concluded that testimony from a police officer that the defendant came "real close to striking and hitting" another vehicle on the road supported a deadly weapon finding. 119 S.W.3d 825, 828 (Tex. App.—San Antonio 2003, no pet.).

When there have been no specific facts demonstrating that anyone was in actual danger of serious bodily injury or death, courts have found evidence legally insufficient to sustain a finding that a motor vehicle was used as a deadly weapon. For example, in *Boes v. State*, a police officer testified that he saw Boes accelerate and "momentarily los[e] control of his vehicle" at an intersection. No. 03-03-00326-CR, 2004 Tex. App. LEXIS 6806, at *2 (Tex. App.—Austin July 29, 2004, no pet.) (mem. op., not designated for publication). Although there was another vehicle behind Boes at the intersection, there was no evidence, even when viewing the facts in the light most favorable to the verdict, that the driver of the other vehicle was endangered by Boes's loss of control at the intersection or that the other driver had to take evasive action to avoid an accident. *Id.* at *6. Accordingly, this Court concluded that the evidence regarding the vehicle's "capability" of causing death or serious bodily injury "merely raises conjecture about what might have happened had the facts been different than they were" and was, therefore, legally insufficient to support the jury's deadly weapon finding. *Id.* at *8.

Similarly, in *Williams v. State*, a police officer testified that he saw a truck roll to a stop in the middle of the highway with Williams "slumped over, passed out or asleep" in the driver's

5

seat. 946 S.W.2d at 433. The officer stopped, walked to the driver's side of the truck, smelled alcohol both on Williams and inside the truck, performed field sobriety tests, and arrested Williams for driving while intoxicated. *Id.* A jury convicted Williams of felony driving while intoxicated and found that he used his truck as a deadly weapon during the commission of the offense. *Id.* at 432. On appeal, Williams argued that the trial court erred by charging the jury on the deadly weapon issue because his act of driving while intoxicated did not put anyone in actual danger of death or serious bodily injury. *Id.* at 433. Because there was no evidence that "any other motorist was on the highway at the time and place that Williams drove in an intoxicated condition or that any other motorist (besides other troopers the arresting officer called for assistance) ever came upon the scene or encountered danger from Williams' truck," the court held that the trial court erred by charging the jury on the deadly weapon issue. *Id.* at 435-36. The police officer's testimony "that he and others could have been endangered by Williams' conduct *if* others had been present is only hypothetical and not evidence of actual danger." *Id.* at 434.

We conclude that the facts of this case are distinguishable from the situations in *Boes* and *Williams* because the record contains evidence that Meyer was actually endangered by Woodall's driving while Woodall was intoxicated. In *Boes*, there was no evidence that any other drivers were close enough to be actually endangered by Boes's loss of control at the intersection. *See* No. 03-03-00326-CR, 2004 Tex. App. LEXIS 6806, at *6. In *Williams*, there was no evidence that any motorists were on the highway as Williams came to a stop in the middle of the highway. *See* 946 S.W.2d at 435. In this case, however, Meyer testified that he was traveling approximately 45 mph when Woodall entered his lane of traffic and "almost hit my truck." He testified that although he did not swerve to avoid a collision, Woodall "just barely misse[d] my truck to where I

6

had to slow down when he came out into my lane." Additionally, Meyer drew a diagram for the jury depicting the path Woodall's vehicle took as it entered US 183, struck several barrels, and almost hit the front of Meyer's vehicle. This evidence of a near collision between Woodall's vehicle and Meyer's vehicle, when viewed in the light most favorable to the verdict, could lead a rational trier of fact to conclude beyond a reasonable doubt that Meyer was actually endangered by Woodall's vehicle as he drove it while intoxicated. Thus, the evidence is legally sufficient to support the jury's finding that Woodall used his vehicle as a deadly weapon during the course of committing the offense of felony driving while intoxicated.

In his second issue, Woodall contends that the trial court erred by denying his proposed jury instruction designed to explain the statutory phrase "capable of causing death or serious bodily injury" as it pertains to a finding that a person used a deadly weapon during the commission of an offense. Review of alleged jury charge error requires that an appellate court make a two-fold inquiry: (1) whether error exists in the jury charge, and (2) whether sufficient harm was caused by the error to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).

Woodall submitted the following proposed jury instruction relating to the issue of whether he used his vehicle as a deadly weapon:

> A vehicle can be a deadly weapon if it is driven so as to be capable of causing death or serious bodily injury. The "capability" of causing death or serious bodily injury must be evaluated in light of the facts that actually existed when the incident occurred, rather than conjecture about what might have happened if the facts had been somewhat different. There must be evidence that others were actually endangered, not merely a hypothetical potential for dangers if others had been present. For there to be evidence that others were actually endangered by the use of

a vehicle, there must be evidence that other driver(s) were both present and endangered by the defendant's use of his vehicle.

The trial court denied this requested instruction and instead submitted the following instruction:

In addition, if you find the Defendant guilty of felony driving while intoxicated, you must further find beyond a reasonable doubt whether the defendant used or exhibited a deadly weapon, namely a motor vehicle, during the commission of the offense.

"Deadly weapon" means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

On appeal, Woodall argues that the word "capable" in the statutory definition of "deadly weapon" misled the jury with respect to the requirement that there must be evidence that others were actually endangered by his use of the vehicle to sustain a finding that his vehicle was a deadly weapon.

The trial judge must submit to the jury "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." Tex. Code. Crim. Proc. Ann. art. 36.14 (West 2007). If a phrase, term, or word is statutorily defined, the trial court must submit the statutory definition to the jury. *Murphy v. State*, 44 S.W.3d 656, 661 (Tex. App.—Austin 2001, no pet.). Words that are not statutorily defined are to be given their common, ordinary, or usual meaning. *Roise v. State*, 7 S.W.3d 225, 242 (Tex. App.—Austin 1999, pet. ref'd). As a general rule, no specific instruction is required for such undefined words in the jury charge, and jurors may thus give them any meaning that is acceptable in common parlance. *Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000); *Martinez v. State*, 924 S.W.2d 693, 698 (Tex. Crim. App. 1996). However,

8

words or terms that do not have a common meaning that the jurors can be fairly presumed to know as well as words or terms with technical legal meanings may need to be defined in the charge. *Middleton v. State*, 125 S.W.3d 450, 454 (Tex. Crim. App. 2003). A trial court has broad discretion in submitting proper definitions and explanatory phrases to the jury. *Rosie*, 7 S.W.3d at 242.

Because the case law requires evidence that others were actually endangered as opposed to evidence of hypothetical or potential danger before someone may be convicted of using a vehicle as a deadly weapon, it is arguable that submitting only the statutory definition of deadly weapon to the jury does not distinctly set forth the law applicable to the case. However, even if error existed in the jury charge in this case, the error did not result in sufficient harm so as to require reversal. Under *Almanza*, we review the record for "some harm" because Woodall's proposed instruction dispensed with the need for further objection at trial. *Abdnor*, 871 S.W.2d at 732; *see* Tex. Code Crim. Proc. Ann. art 36.15 (West 2006).

As we have noted, the record contains legally sufficient evidence that Woodall's use of his vehicle placed Meyer in actual danger. In fact, the evidence of how Woodall was driving and his near-miss of Meyer was undisputed. Woodall plainly endangered Meyer. While there may be a case where the issue of whether anyone was in actual danger is debatable or disputed, it is not this case. Thus, even if the failure to submit the instruction proposed by Woodall was error—a point on which we express no opinion—there is no reversible error here because the jury could not have been misled by the statutory definition of deadly weapon into rendering an unjust verdict based on the evidence in this record.

In light of the entire jury charge, the fact that the manner in which Woodall was driving and Meyer's proximity were undisputed, and all other relevant information revealed by the record of the trial as a whole, we conclude that the trial court's decision to refuse Woodall's proposed instruction did not result in "some harm" to Woodall. Any charge error was, therefore, harmless.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: August 14, 2008

Do Not Publish

10