Opinion filed November 5, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed November 5,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00358-CR

                                                       ________

 

                                    LARRY
DALE SMITH, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 35th District Court

                                                          Brown
County, Texas

                                                 Trial
Court Cause No. CR18783

 



 

                                             M
E M O R A N D U M   O P I N I O N

Larry
Dale Smith appeals his conviction by a jury of the offense of evading arrest,
following his plea of guilty to that offense.  The jury found that he used or
exhibited a deadly weapon in the commission of the offense.  Smith had pleaded
not guilty to the deadly weapon allegation.  The jury, finding that Smith had a
prior conviction as alleged, assessed his punishment at twenty years in the
Texas Department of Criminal Justice, Institutional Division.  Smith contends
in a single point on appeal that the evidence is factually insufficient to
support his conviction.  We affirm.








In
order to determine if the evidence is factually sufficient, the appellate court
reviews all of the evidence in a neutral light. Watson v. State, 204
S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v. State,
144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1,
10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08
(Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim.
App. 1996).  Then, the reviewing court determines whether the evidence
supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence. Watson, 204 S.W.3d at 414-15;
Johnson, 23 S.W.3d at 10-11.

John
C. Harper testified that he is a lieutenant in the Brownwood Police
Department.  He indicated that on December 17, 2006, he noticed a gold Mercury
Marquis.  He said he followed the vehicle and noticed that it was changing from
the right lane to the left lane and the turn lane without signaling any of the
maneuvers.  He indicated that at 1:30 to 2:00 p.m. on a Sunday afternoon, when
this incident occurred, there was quite a bit of traffic on the roadway.  After
he decided to stop the vehicle because of its failure to signal its turns, he
turned on his lights and moved in front of the vehicle.  Rather than stopping,
the vehicle went around him, while rapidly accelerating.  The vehicle moved to
the left lane as it approached the intersection of West Commerce and West
Austin, then turned right without stopping for a red light facing in its
direction.  Lieutenant Harper characterized West Commerce and West Austin as
multilane roadways.  He described West Commerce as being busy.  He indicated
that, when the vehicle made the right turn on the red light from the left lane,
there was a car in the right lane stopped at the red light.  Lieutenant Harper
stated that it took him a moment to clear that intersection to pursue the
vehicle, which had continued on and had accelerated.  He indicated that his
vehicle=s siren had
multiple tones to alert the public that he was approaching and requesting the
right-of-way.  He related that the vehicle he was pursuing continued to
accelerate rapidly.  He said that, at another intersection near a Wal-Mart and
an Underwoods, the vehicle again made a right turn from the left lane, while
facing a red light, with a vehicle in the right lane stopped at the light.  He
mentioned that the vehicle failed to stop at a stop sign when crossing U.S.
377, or Main Street.  Lieutenant Harper stated that it was a very busy
intersection that had traffic on it at the time.  He related that the vehicle
ran the red light at three other intersections.

Lieutenant
Harper described a T-intersection at which no left turns are allowed due to a
blind approach from an underpass.  He said the vehicle went through the
intersection really fast, making a left turn.  He indicated that, while
traveling down one street, the speed reached over eighty miles per hour and
that it may have reached ninety miles per hour.  He insisted that, on this
road, they overtook several cars and met several cars coming in their
direction.  He said this was also true on another road.








Lieutenant
Harper testified that, at an access road that he characterized as one with a
great deal of traffic that moves at a high rate of speed, the vehicle narrowly
missed having an accident with a pickup pulling a trailer that pulled right in
front of the vehicle.  He described it as a close call with a major accident. 
He also described a later incident in which a driver had to pull completely off
the road as the vehicle and the pursuing officers approached.  Lieutenant
Harper identified the driver of the vehicle he pursued as Larry Dale Smith.  He
testified that, in his opinion, Smith was under the influence of an
intoxicating substance other than alcohol.

On
cross-examination, Lieutenant Harper acknowledged that Smith did not try to run
over him with his car, that he did slow down at multiple intersections, that
Smith did not try to get him hit by someone else, that occasionally he would
drive in a way to leave more space between his vehicle and others on the road,
that he did not come close to hitting the vehicles stopped in the right lane
when he made a right turn from the left lane, and that he did not hit any other
cars.  On redirect examination, Lieutenant Harper noted that, if Smith did not
want to hurt someone, the safest thing to do would have been for him to stop
when the officer first tried to stop him.

Bruce
Spruill testified that he is a police officer for the City of Brownwood.  He
said that he watched the video of the chase in this case and that, based upon
his training and experience in dealing with this type of situation, it was his
opinion that the vehicle as it was operated was being used as a deadly weapon. 
He said that there was no question about that and that he noticed on the video
instances where there were close calls where members of the public very
narrowly missed getting hit by Smith.

Clayton
Wayne Seale, a passenger in Smith=s
car, testified that, when the chase began, he thought they were going to die
because he thought they would get run over or run into somebody, based on the
way Smith was driving.  He said that there were many times during the chase
that Smith drove through stop signs and red lights in a way that caused him to
fear for his own life.

Joshua
Dwayne Smith, the son of Larry Dale Smith and a passenger during the chase,
described what happened as:  AWell,
we sped, kept going, dodging as much traffic as we could, almost getting hit
several different times, almost ramming into other cars, and speeding pretty
much.@  He said he was
worried for his own personal safety.  He indicated that he was worried that
someone was going to get killed.  Joshua referred to a vehicle moving on the
access road that they almost collided with.








An
examination of the video of the chase shows that, while Smith did take some
precautions to avoid hitting other vehicles, there were at least two instances
in which he narrowly avoided hitting vehicles at high speed.

We
hold that the evidence is factually sufficient to support the jury=s finding that Smith,
during the commission of the offense of evading arrest, used a deadly weapon, a
vehicle that, in the manner of its used or intended use, was capable of causing
death or serious bodily injury.  Smith urges that the evidence is insufficient
because there was only a hypothetical danger to others, but no actual danger. 
He primarily relies on the opinions in Drichas v. State, 175 S.W.3d 795,
799 (Tex. Crim. App. 2005); Drichas v. State, 219 S.W.3d 471, 475 (Tex. 
App.CTexarkana 2007,
pet. ref=d); Cates
v. State, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); Mann v. State,
13 S.W.3d 89, 92 (Tex. App.CAustin
2000), aff=d,
58 S.W.3d 132 (Tex. Crim. App. 2001); and Williams v. State, 946 S.W.2d
432, 435-36 (Tex. App.CFort
Worth 1997), rev=d,
970 S.W.2d 566 (Tex. Crim. App. 1998).

We
find that all of these cases either support our opinion or are
distinguishable.  In Drichas, the court did hold that, in order to
justify a deadly weapon finding with respect to a motor vehicle, the danger
posed to motorists must be actual, and not simply hypothetical.  Drichas,
175 S.W.3d at 799.  The court went on to say, however, that the statute does
not require pursuing police officers or other motorists to be in a zone of
danger, take evasive action, or require an appellant to intentionally strike
another vehicle in order to justify a deadly weapon finding.  Id.  It
held that a deadly weapon finding is appropriate on a sufficient showing of
actual danger, such as evidence that another motorist was on the highway at the
same time and place as the defendant when the defendant drove in a dangerous
manner.  Id.  As we have noted, in this case many motorists were on the
highway at the same time and place as Smith when he was driving in a dangerous
manner, including more than one with whom he almost collided.  We find Drichas
to support our opinion.

On
remand following the opinion in Drichas, the court of appeals held that
the evidence was factually insufficient, noting that, while there may have been
some traffic on the roadways of Texarkana at the time the appellant in that
case was driving, the evidence was uncertain regarding the presence of other
motorists, where or when they were encountered, or even whether they were on
the same roadway or a nearby road.  Drichas, 219 S.W.3d at 475-76.  In
the case at bar, the evidence showed that other vehicles were at or near Smith
and that he almost collided with more than one of them.








We
find the opinion in Cates to be distinguishable.  In Cates, the
court held that, because the case was one of leaving the scene of an accident,
the relevant time period for determining whether the defendant=s truck was used and
exhibited as a deadly weapon was the time period after the accident.  Cates,
102 S.W.3d at 738.  The court noted that there was no evidence that the truck
was driven dangerously after the accident nor was there evidence of any other
traffic on the roadway nor any evidence that anyone was endangered by the truck
after it left the scene of the accident.  Id.  In the case at bar, there
is substantial evidence that Smith drove his car dangerously and that there was
other traffic on the roadway while Smith was driving in that manner, some of
which traffic was endangered by Smith=s
conduct.

In
Mann, the court held that a deadly weapon finding requires evidence that
others were endangered, not merely a hypothetical for danger if others had been
present.  Mann, 13 S.W.3d at 92.  The opinion went on to note that the
appellant in that case almost hit another vehicle head-on, but the other
vehicle took evasive action.  Id. Additionally, an experienced officer
testified that the collision was capable of causing death or serious bodily
injury.  Id.  The court held that the evidence was sufficient to support
the deadly weapon finding.  Id.  We find Mann to be consistent
with and supportive of our opinion.

In
Williams, a felony driving-while-intoxicated case, the court held that
the evidence was insufficient to support a finding that the appellant used his
vehicle as a deadly weapon because there was no evidence that there was any
other motorist on the highway at the time and place the appellant drove in an
intoxicated condition or that any other motorist, other than arresting
officers, came upon the scene or was endangered by the appellant=s truck stopped on the
highway.  Williams, 946 S.W.2d at 435-36.  As we have previously noted,
there was evidence in this case that there were numerous motorists on the
highway at the time and place Smith drove in a dangerous manner, more than one
of which were endangered by his conduct.  We overrule Smith=s sole point on appeal.

The
judgment is affirmed.

 

November 5, 2009                                                                               PER
CURIAM

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Hill, J.[1]









[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.