In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00173-CR

                                                ______________________________

 

 

                                BRENT GREGORY MOORE,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 241st
Judicial District Court

                                                             Smith County, Texas

                                                       Trial Court
No. 241-0712-10

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

I.          Background

            The
genesis of the event leading to Brent Gregory Moore’s conviction of the felony
offense of evading arrest with a vehicle,[1]
including a deadly weapon allegation, an allegation of a prior felony
conviction, and a previous conviction for evading arrest was a fairly mundane
traffic stop in the early morning hours of April 14, 2010.  The traffic stop was occasioned because the
pickup truck Moore was driving on U.S. Highway 69 in Smith County, Texas, did
not have an operational light illuminating his license plate.[2]  

            After
having been stopped and pulled over by Jeff Hopson, a Smith County sheriff’s
deputy, the incident rapidly escalated. 
Moore refused to comply with Hopson’s request to roll down the driver’s
side window of his truck, to place his hands on the steering wheel, and
finally, to exit the vehicle.  When
Hopson finally reached through the half-open window in an attempt to unlock the
vehicle’s door, Moore grabbed his arm, but Hopson was able to free
himself.  Back-up officers Josh Caulkins,
Toby Hughes, and Glenn Barnes quickly arrived on the scene to assist
Hopson.  After Hopson extricated his arm
from Moore’s grasp, Moore put his truck in gear, turned his truck around so
that it was traveling north in the southbound lane, and sped off.  As Moore sped into the U-turn, Barnes was
struck with the rear quarter panel of the truck when Moore sped off, causing
Barnes to suffer a sprained knee.  Even
though Hughes shot the right front truck tire, causing it to deflate, and
Caulkins fired an additional three rounds in an attempt to disable the truck,
Moore sped off, going north in the southbound lane.  

            Reaching
speeds of over 100 miles per hour (despite the deflated front tire), Moore fled
from the pursuing deputies.[3]
 The chase ended when Moore’s truck
became disabled, evidently as a result of rounds fired into its engine.  Moore was arrested and charged with the
felony offense of evading arrest with a vehicle, with a deadly weapon
allegation,[4]
an allegation of a prior felony conviction, and a previous conviction for
evading arrest.  The jury returned a
guilty verdict and assessed a punishment of twenty years’ imprisonment and a
fine in the amount of $10,000.00.[5]  

            In
a single issue, Moore claims that the evidence is legally insufficient to
support the deadly weapon finding.  We
affirm the judgment of the trial court.

II.        Standard
of Review

            In
evaluating legal sufficiency, we review all the evidence in the light most
favorable to the jury’s verdict to determine whether any rational jury could
have found the essential elements of evading detention with a motor vehicle
beyond a reasonable doubt.  See Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing Jackson v. Virginia, 443 U.S. 307, 319
(1979)); Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007); Hartsfield
v. State, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref’d).  Our rigorous legal sufficiency review focuses
on the quality of the evidence presented.  Brooks, 323 S.W.3d at 917 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion, while giving deference to the
responsibility of the jury “to fairly resolve conflicts in testimony, to weigh
the evidence, and to draw reasonable inferences from basic facts to ultimate
facts.”  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007) (citing Jackson,
443 U.S. at 318–19).

            We
are directed to subject challenges to the legal sufficiency of the evidence to
the hypothetically-correct jury charge analysis.  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically-correct jury charge “sets
out the law, is authorized by the indictment, does not unnecessarily increase
the State’s burden of proof or unnecessarily restrict the State’s theories of
liability, and adequately describes the particular offense for which the
defendant was tried.”  Id.  This
standard ensures that a judgment of acquittal is reserved for those situations
in which there is an actual failure in the State’s proof of the crime, rather
than a mere error in the jury charge submitted. 
Id.  

III.       Legally Sufficient
Evidence Supports the Verdict 

            Moore
claims that the evidence at trial proved only a hypothetical danger posed by
the manner in which he operated his vehicle because no person was actually
placed in danger of serious bodily injury or death.  Moore focuses on the fact that there were no
other vehicles encountered by him on the road during his high-speed flight from
the deputies, so the danger posed by driving at a high rate of speed in the
wrong lane of traffic was merely hypothetical. 
He, therefore, contends the evidence is legally insufficient to support
a finding that he used or exhibited his vehicle in a manner consistent with the
definition of a deadly weapon.  

            The
Texas Penal Code defines “deadly weapon” as “anything that in the manner of its
use or intended use is capable of causing death or serious bodily injury.”  Tex.
Penal Code Ann. § 1.07(a)(17)(B) (West 2011).  “Serious bodily injury” is bodily injury that
“creates a substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.”  Tex. Penal Code Ann. § 1.07(a)(46)
(West 2011).  Within the context of a
deadly weapon allegation, the evidence before this Court must show that (1) the
item alleged as a deadly weapon (here, a pickup truck) meets the statutory
definition of a dangerous weapon, (2) the deadly weapon was used during the
event that led to the felony conviction, and (3) other people were put in
actual danger.  Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).  Moore only challenges the third requirement,
i.e., that other people were put in actual danger.  

            A
motor vehicle may be a deadly weapon, depending on the circumstances of its
use.  Id.  However, not every vehicle used to evade
arrest is a deadly weapon.  Id. at 799 (“We do not suggest that a
defendant should be charged with using a vehicle as a deadly weapon every time
the offense of evading arrest or detention is committed.”).  A motor vehicle is considered a deadly weapon
if the manner of its use is capable of causing death or serious bodily injury;
a deadly weapon finding is supported “on a sufficient showing of actual
danger.”  Id. 

            Moore
claims that the evidence was insufficient here because no one was placed in danger
of serious bodily injury or death.  Said
another way, Moore contends there is no evidence to show that his truck was
capable of causing death or serious bodily injury to another person.  See
Williams v. State, 946 S.W.2d 432, 435–36 (Tex. App.—Fort Worth 1997), rev’d in part on other grounds, 970
S.W.2d 566 (Tex. Crim. App. 1998) (to sustain finding, there must be evidence
to show vehicle capable of causing death or serious bodily injury to another
person).  This capability exists if
“there was someone present who was placed in danger of serious bodily injury or
death.”  Id. at 435.  There is no
requirement for the actor to have the specific intent to use the vehicle as a
deadly weapon.  Drichas, 175 S.W.3d at 798.

            Here,
the evidence shows that Moore fled pursuit at speeds in excess of 100 miles per
hour while driving the wrong direction on a divided highway, including portions
which were in a construction zone.  When
proceeding up hills, Moore took no precautions of either moving to the shoulder
or slowing down so as to minimize the danger of oncoming traffic appearing
unexpectedly.  Although the portion of
U.S. Highway 69 where the chase occurred routinely carries traffic all hours of
the day, there was no other traffic on the road at the time of the chase, other
than a single vehicle actually encountered “when [the chase] was coming to an
end.”  This lone vehicle was encountered
after Moore’s truck moved onto the shoulder after his vehicle had been disabled
and was rolling to a stop.  There were no
other vehicles encountered in the area when Moore was traveling at extremely
high rates of speed during the chase.  

            In
a similar case, the Tyler Court of Appeals found the evidence sufficient to
sustain a deadly weapon finding where the appellant fled from the police at
speeds that reached 100 miles per hour. 
In that case, even though the driver crossed into the oncoming lanes of
traffic around blind curves and paid no heed to traffic control measures, there
were no cars in his path at the time. 
Thus, the danger was merely hypothetical.  Jones
v. State, No. 12-07-00308-CR, 2008 WL 2814877 (Tex. App.—Tyler July
23, 2008, pet. ref’d) (mem. op., not designated for publication).[6]  In addition to hypothetical dangers, Jones involved actual danger illustrated
by the fact that Jones narrowly missed a motorcycle, almost lost control of his
own vehicle, another car had to move into a driveway to avoid Jones, and Jones
encountered several oncoming vehicles while traveling at a high rate of speed
and not keeping solely to his own lane.  Id. at *3.  The evidence was, therefore, sufficient to
sustain the deadly weapon finding.  

            The
State argues that Moore posed actual danger in the way he operated his
vehicle.  It is apparent that Moore
caused actual injury to Barnes, who was struck by the rear quarter panel of
Moore’s truck as he turned his truck and sped off in order to elude
capture.  As a result of this contact,
Barnes was taken to the hospital for an injury to his knee and was required to
wear a knee brace for two weeks.  As a
result, Barnes was off duty for a period of time.  To be sure, the injury sustained by Barnes
could have been much more severe.  The
video recording viewed by the jury reveals that Barnes, as well as the other
officers, were standing within inches of Moore’s truck when he suddenly sped
off into a U-turn.  While it is
questionable whether Barnes’ injury meets the statutory definition of “severe
bodily injury,” it is not required that an actual severe bodily injury be
sustained, only that Barnes had been “placed in danger of serious bodily injury
or death” in order to show the vehicle was capable of causing death or serious
bodily injury.  Williams, 946 S.W.2d at 435. 
As this Court stated in Drichas v.
State, 219 S.W.3d 471, 476 n.5 (Tex. App.—Texarkana 2007, pet. ref’d),
police officers should not be excluded from the class of persons capable of
being endangered by the driver of a fleeing vehicle.  

            All
that is required for a motor vehicle to be considered a deadly weapon is that
it be used in a manner capable of causing death or serious bodily injury and
that it pose an actual risk.  The
evidence in the present case met that burden. 
The manner in which Moore operated his truck posed actual danger to
Barnes as well as to the other officers in proximity to his truck at the time
he rapidly accelerated the truck, a course of action which dangerously swung it
out in the path of the officers, who were forced to move quickly back from the
truck in order to avoid being struck. 
The danger to the deputies was not theoretical, it was real.  The evidence here, when viewed in a light
most favorable to the jury’s verdict, supports the conclusion that a rational
fact-finder could have found, beyond a reasonable doubt, that Moore used his
truck as a deadly weapon during the commission of the offense of evading arrest
or detention, or immediate flight from said offense.  

IV.       Conclusion

            We affirm the judgment of the trial
court.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          July 29, 2011

Date Decided:             August 2, 2011

 

Do Not Publish











[1]Tex. Penal Code Ann. § 38.04 (West
2011).

 





[2]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann.
§ 73.001 (West 2005).  We are unaware of
any conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex.
R. App. P. 41.3.





[3]The
chase was captured on three separate video recordings from the responding
officers’ patrol vehicles.  

 





[4]The
jury was asked, during the punishment phase of the trial, whether Moore used a
deadly weapon and answered in the affirmative.  See Lafleur
v. State, 106 S.W.3d 91, 94–96 (Tex. Crim. App. 2003) (jury may make
affirmative finding through deadly weapon special issue included in jury
charge). Such finding was recorded in the judgment.  A deadly weapon finding limits a defendant’s
eligibility for community supervision and parole.  Tex.
Code Crim. Proc. Ann. art. 42.12, §3g(a)(2) (West Supp. 2011); Tex. Gov’t Code Ann. §§ 508.145,
508.149, 508.151 (West Supp. 2011).

 

An affirmative deadly weapon finding has a negative
impact on a defendant’s eligibility for community supervision, parole, and
mandatory supervision.  Mann v. State, 58 S.W.3d 132, 133 (Tex.
Crim. App. 2001).

 





[5]The
applicable sentencing range was enhanced based on Moore’s plea of true to a
prior felony conviction.  Tex. Penal Code Ann. § 12.42 (West
2011).





[6]Unpublished
opinions may be cited to illustrate the reasoning employed when faced with
similar facts “rather than simply arguing without reference, that same
reasoning.”  Carrillo v. State, 98 S.W.3d 789, 794 (Tex. App.––Amarillo 2003,
pet. ref’d).