NUMBER 13-09-00473-CR

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI
- EDINBURG

                                                                     


 

ALBERT FOLEY, JR.,                                                                   Appellant,

 

v.

 

THE STATE OF TEXAS,                                                               Appellee.

                                                                     


 

On appeal from the
329th District Court

of Wharton County,
Texas.

                                                                     


 

MEMORANDUM OPINION

 

                     Before
Justices Yañez, Garza, and Benavides

                          Memorandum
Opinion by Justice Garza

 








A
jury convicted appellant Albert Foley Jr. of his third driving while
intoxicated offense.   See Tex. Penal Code Ann. § 49.04 (Vernon
2003), § 49.09 (Vernon Supp. 2010).  The jury also determined that the vehicle
Foley was driving at the time of the offense was used as a deadly weapon.  See
id. § 1.07(a)(17) (Vernon Supp. 2010).  After finding two enhancement
allegations to be true, the trial court sentenced Foley to twenty-five years= imprisonment in the Institutional Division of the Texas
Department of Criminal Justice.  By four issues, Foley asserts that:  (1) there
was no probable cause to support the search warrant for blood evidence; (2) he
was given ineffective assistance of counsel; (3) the evidence was insufficient
to support the driving while intoxicated conviction; and (4) the evidence was
insufficient to support the deadly weapon finding.  

We
modify the trial court’s judgment and affirm it as modified.

I. Background

On
May 21, 2008, seventy-year-old Foley crashed his pickup truck into an aluminum
barrier on the Highway 59 service road in Wharton County, Texas.  Don Mallett,
an employee from a nearby agricultural business named Wilbur-Ellis, testified
that he was working in his office approximately sixty feet from the road when
he heard the crash.  Mallett stated that, from his office window, he saw that
Foley=s truck had careened off the road into
some tall grass after crashing and that the truck=s
tires were Athrowing dirt and rocks@ as Foley attempted to get back onto the road.  Mallett
called local law enforcement to investigate.

Another
Wilbur-Ellis employee, Guy Hill, testified that he was working outside when he
saw Foley=s pickup truck driving approximately
sixty miles per hour towards the aluminum barrier.  Hill was 225 feet away from
the crash site.  Hill testified that he believed Foley was intoxicated at the
time of the accident because after Foley exited his pickup truck, he could not
stand up without hanging onto the door or the side of his truck. 








Officer
Clint Savino, a patrol officer from the El Campo Police Department, responded
to the accident scene.  Officer Savino testified that he found Foley attempting
to change a tire on his pickup which had blown out during the crash.  He
testified that Foley=s eyes were red and glassy, his speech
was unintelligible and slurred, his breath smelled strongly of alcohol, and
that he was grasping onto the door of the pickup truck to stand up straight
while speaking to the officer.  Officer Savino also testified that he saw an open
sixteen-ounce can of Busch beer in the pickup truck.  Later, while conducting
an inventory of the vehicle, he found a quarter-full bottle of Boone=s Wild Cherry wine, and an unopened sixteen-ounce can of
Busch beer.  Officer Savino stated that Foley admitted that he had been driving
and thought that he was Aon the north side of Houston,@ when he was, in fact, approximately seventy miles south
of the city.  Foley refused to take a breathalyzer test or provide a blood
sample.

While
at the accident scene, Officer Savino performed four field sobriety tests on
Foley—the horizontal gaze nystagmus test, the walk-and-turn test, alphabet
recitation without singing, and the one-leg stand test.  Foley failed to
complete the first two tests.  During trial, Officer Savino admitted that field
sobriety tests are not reliable for persons over the age of sixty-five, as
advanced age and health issues can factor into whether one passes a field
sobriety test.  Officer Savino Agave consideration that [Foley was]
seventy years old and that he might have arthritis or [a condition] that would
hinder his being able to perform the tests.@ 
Officer Savino also admitted that he did not ask Foley whether he had sustained
any head injuries during the crash.  

Officer
Savino arrested Foley for driving while intoxicated and transported him to the
El Campo Police Department.  While there, Officer Savino drafted an affidavit
to request a blood search warrant.  The affidavit included Officer Savino=s observations of Foley=s
appearance and demeanor during his arrest, and also his observations from the
field sobriety tests.  Judge Tim Drapela signed the warrant upon review.  The
blood test revealed that Foley=s blood alcohol level was .26, over
three times the legal limit.  

A
jury convicted Foley of his third driving while intoxicated offense and also of
using or exhibiting a deadly weapon, specifically, a vehicle.  The court
sentenced Foley to twenty-five years= incarceration.  This appeal followed.

II. Probable
Cause for Search Warrant

A.        Standard of Review and Applicable Law                     








In
general, obtaining a blood sample is a search and seizure within the meaning of
the Fourth Amendment of the United States Constitution.  U.S. Const. amend. IV; see Schmerber
v. California, 384 U.S. 757, 767 (1966).  Consequently, Article 1, Section
9 of the Texas Constitution requires that a search warrant be used to take
blood evidence.  Tex. Const. art.
1, § 9; State v. Dugas, 296 S.W.3d 112, 115 (Tex. App.–Houston [14th Dist.]
2009, pet. ref=d).  Under Texas law, a search warrant
may be issued to obtain Aproperty or items . . . constituting
evidence of an offense or constituting evidence tending to show that a
particular person committed an offense.@  Tex.
Code Crim. Proc. Ann. art. 18.02(10) (Vernon 2005).  Blood is an item of
evidence within the meaning of article 18.02(10).  Id.; see Dugas,
296 S.W.3d at 115; Muniz v. State, 264 S.W.3d 392, 396 (Tex. App.–Houston
[1st Dist.] 2008, no pet.).  

A
magistrate may not issue a search warrant unless he or she receives a sworn
affidavit which sets forth sufficient facts to establish probable cause.  Tex. Code Crim. Proc. Ann. art.
18.01(c) (Vernon Supp. 2010).  The sworn affidavit must show:  (1) that a
specific offense has been committed; (2) the specifically described property or
items to be searched for or seized which would constitute evidence of the
offense or evidence that a particular person committed that offense; and (3)
that the property or items constituting such evidence are located at or on the
particular person, place, or thing to be searched.  Id.  Whether the
facts mentioned in the affidavit are adequate to establish probable cause
depend on the totality of the circumstances.  Ramos v. State, 934 S.W.2d
358, 362-63 (Tex. Crim. App. 1996).  AProbable cause exists when, under the
totality of the circumstances, there is a >fair probability= that contraband or evidence of a crime will be found . .
. .@  Rodriguez v. State, 232
S.W.3d 55, 60 (Tex. Crim. App. 2007).  The standard for review in challenging
whether probable cause existed for an affidavit is whether the magistrate had a
substantial basis for concluding that it existed.  Illinois v. Gates,
462 U.S. 213, 236 (1983).  

B.        Analysis








By
his first issue, Foley argues that the search warrant was improper because it
was not supported by probable cause.  Specifically, he contends that the field
sobriety tests mentioned in Officer Savino=s warrant were not a credible source
of information regarding Foley=s alleged intoxication due to Foley=s age.  In support of this argument, Foley cites
testimony from Officer Savino wherein he admits that field sobriety tests are
not reliable indicators of intoxication for persons over the age of sixty-five.

Assuming,
without deciding, that the field tests were inapplicable to Foley, we conclude
that the remaining facts in Officer Savino=s affidavit were still sufficient to
establish probable cause.  Officer Savino=s affidavit reported that Foley
smelled strongly of alcohol, had red and glassy eyes, slurred speech, poor
balance, and that he refused to provide a breath or blood sample.  The
affidavit further showed that Foley was geographically disoriented because he
thought that he was on the Anorth side of Houston,@ when indeed he was seventy miles south in Wharton
County.  The affidavit also provided that Foley admitted to driving.  Finally,
Officer Savino stated in the affidavit that, AI
have seen intoxicated persons on many occasions in the past.  Based on all of
the above and my experience and training, I determined that the suspect was
intoxicated.…@  

Significantly,
we note that during trial, Judge Drapela stated that even without the
information from the field tests, he still would have found probable cause
because of Foley=s Aeye
glaze@ and Athe
remarks about the odor on [Foley=s] breath, remarks about his balance,
the fact that he had been involved in a collision, and the fact that he thought
he was about [seventy] miles from where he actually was.@  In light of the foregoing, we hold that the facts
stated in Officer Savino=s affidavit established probable cause
to obtain a blood sample, even if we disregard the field test information in
the affidavit.  Under the totality of the circumstances, there was sufficient
reason to believe that obtaining a blood sample would elicit evidence to prove
that Foley committed the offense of driving while intoxicated.  See
Rodriguez, 232 S.W.3d at 60.  We overrule this issue.

III.
Ineffective Assistance of Counsel

A.        Standard of Review and Applicable Law








The
United States Supreme Court set forth a two-part test in Strickland v.
Washington to determine whether a criminal defendant was provided
ineffective assistance of counsel.  See Goodspeed v. State, 187 S.W.3d
390, 392 (Tex. Crim. App. 2005) (citing Strickland v. Washington, 466
U.S. 668, 687 (1984)).  The Strickland test first requires the appellant
to demonstrate that counsel=s performance was so deficient that it
fell below an objective standard of reasonableness.  Thompson v. State,
9 S.W.3d 808, 812 (Tex. Crim. App. 1999); see Strickland, 466 U.S. at
687.  Assuming the appellant has demonstrated deficient assistance, he or she
must then show that there is a reasonable probability that the final result
would have been different but for counsel=s errors.  Thompson, 9 S.W.3d
at 812-13. 

The
appellant must prove ineffective assistance of counsel by a preponderance of
the evidence.  Id.  The appellant must overcome the strong presumption
that counsel=s conduct fell within the wide range
of reasonable professional assistance and that counsel=s actions could be considered a sound trial strategy.  Jaynes
v. State, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.).  A
reviewing court should not second-guess legitimate tactical decisions made by
trial counsel.  State v. Morales, 253 S.W.3d 686, 696 (Tex. Crim. App.
2008).  In determining whether an attorney=s performance was deficient, we apply
a strong presumption that the attorney=s conduct was within the wide range of
reasonable professional assistance.  Thompson, 9 S.W.3d at 813.  We
review the effectiveness of counsel in light of the totality
of the representation and the circumstances of each case.  Id.  The
court of criminal appeals has made clear that, in most cases, a silent record that
does not explain counsel's actions will not overcome the strong presumption of
reasonable assistance.  See Rylander v. State, 101 S.W.3d 107, 110-11
(Tex. Crim. App. 2003).  

B.        Analysis

Foley
complains that his trial attorney:  (1) only visited him once in the jail prior
to trial; (2) did not conduct a fact investigation; (3) did not prepare a
defense; (4) failed to interview or present witnesses during the sentencing
hearing; (5) made no effort to learn Foley=s social history; and (6) refused to
provide a copy of the police report to Foley.








In
his defense, Foley=s trial counsel filed an AAffidavit of Defense Counsel@ after trial.  The affidavit, in relevant part, stated:

My name is Richard L. Manske, TBC #
12956500 and I am over the age of eighteen years and competent to make this
affidavit.  I represented Mr. Foley for pre-trial and trial of the
above-captioned cause.  I met with my client at least once at the jail and
several times in court when he made various appearances.  With the assistance
of my associate David Kiatta, I prepared and presented what I believe was the
best possible defense given the facts of the case.  We litigated a contentious
motion to suppress and were prepared to cross-examine each and every witness
presented at both the guilt and punishment phases.  As for additional
punishment witnesses, I felt that the judge was inclined to be merciful in this
case.  I did not believe it wise to give the State the opportunity to cross-examine
any defense punishment witnesses and possibly harm my client thereby.  The
wisdom of that decision is evident in that the judge assessed the minimum
lawful sentence given my client=s criminal history.  

 

Manske=s affidavit addresses Foley=s
first, second, third, and fourth sub-issues.  For example, Manske states that
he met with Foley more than once, both in jail and at various court
appearances.  During these visits, Manske learned information about Foley and
the case which helped him prepare and present Athe
best possible defense given the facts of the case.@  Manske also had a trial strategy with respect to not
presenting witnesses during the sentencing hearing, as he felt the Ajudge was inclined to be merciful@ to Foley and that he did not want to Agive the State the opportunity to cross-examine any
defense punishment witnesses@ which could possibly harm Foley.  

Manske
provided reasonable explanations of his decisions that appear to be within the
wide range of reasonable professional assistance.  Jaynes, 216 S.W.3d at
851.  As a reviewing court, we do not second-guess his decisions as trial
counsel.  Morales, 253 S.W.3d at 696.  However, even if we assumed that
Manske=s actions fell below the objective
standard of reasonableness, Foley has not established that a different result
would have occurred had Manske acted differently.  See Thompson, 9
S.W.3d at 812.  Thus, we cannot conclude that Manske=s actions resulted in any prejudice to Foley.  Id.
at 813.  








With
respect to Foley=s fifth and sixth sub-issues, the
record is silent as to whether Manske made an effort to learn Foley=s social history[1]
or whether he gave Foley a copy of the police record.  Accordingly, Foley=s complaints regarding these issues are not firmly found
in the record.  Id.  AA silent record which provides no
explanation for counsel=s actions will not overcome the strong
presumption of reasonable assistance.@  See Rylander, 101
S.W.3d at 110-11; Hernandez v. State, 198 S.W.3d 257, 269 (Tex. App.–San
Antonio 2006, pet. ref=d).  Thus, we find that Foley has
failed to rebut the presumption that Manske made these decisions based on sound
professional judgment.  See Rylander, 101 S.W.3d at 111.  We overrule
this issue.        

IV. Insufficiency
of Evidence

A.        Standard of Review 

Foley=s third and fourth issues challenged the factual
sufficiency of the evidence used to convict him of driving while intoxicated
and to establish that the vehicle he drove was used as a deadly weapon.  Given
the Texas Court of Criminal Appeals=s recent  Brooks v. State opinion,
however, we now construe Foley=s factual sufficiency challenges as
challenges to the legal sufficiency of the evidence.  Brooks v. State,
No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240, at *26 (Tex. Crim. App. Oct.
6, 2010) (plurality op.).  Brooks held that there is Ano meaningful distinction between the Jackson v.
Virginia legal-sufficiency standard and the Clewis
factual-sufficiency standard, and these two standards have become indistinguishable.”
Id. at **25-26; see Jackson v. Virginia, 443 U.S. 307 (1979).   Thus,
the Jackson v. Virginia standard is Athe
only standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.  All other cases to the
contrary . . . are overruled.@  Brooks, 2010 Tex. Crim. App.
LEXIS 1240, at *57.  Accordingly, we will only apply the Jackson evidentiary
sufficiency standard.  

Jackson holds that when conducting a legal sufficiency
review, a court must ask whether Aany rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt”—not whether Ait
believes that the evidence at the trial established guilt beyond a reasonable
doubt.@  Jackson, 443 U.S. at 318-19. 
A legal sufficiency analysis requires the court to view all of the evidence in Aa light most favorable to the verdict and to determine
whether a rational trier of fact could have found all of the essential elements
of the crime beyond a reasonable doubt.@  Id.; see Laster v. State,
275 S.W.3d 512, 517 (Tex. Crim. App. 2009).  The trier of fact is the sole
judge of the facts, the credibility of the witnesses, and the weight given to
testimony.  Tex. Code Crim. Proc. Ann.
art. 38.04 (Vernon 1979); Beckham v. State, 29 S.W.3d 148, 151 (Tex.
App.–Houston [14th Dist.] 2000, pet. ref=d).  AAppellate
courts are ill-equipped to weigh the evidence; unlike the fact-finder—who can
observe facial expressions and hear voice inflections first-hand—an appellate
court is limited to the cold record.@  Laster, 275 S.W.3d at 517
(citing Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)).  We
resolve any inconsistencies in the evidence in favor of the final judgment and
consider whether the factfinder reached a rational decision.  Curry v. State,
30 S.W.3d 394, 406 (Tex. Crim. App. 2000). 

          Sufficiency
of the evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Villarreal v. State, 286 S.W.3d
321, 327 (Tex. Crim. App. 2009); Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.–Corpus
Christi 2002, pet. ref=d).  ASuch
a charge is one that accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State=s burden of proof or unnecessarily restrict the State=s theories of liability, and adequately describes the
particular offense for which the defendant was tried.@  Villarreal, 286 S.W.3d at 327; Malik, 953
S.W.2d at 240.  Under a hypothetically correct jury charge, Foley committed the
offense of driving while intoxicated if he: (1) was intoxicated (2) while
operating a motor vehicle (3) in a public place.  Tex. Penal Code Ann. §
49.04(a).  Foley used his vehicle as a deadly weapon if (1) its use or
intended use (2) was capable of causing (3) death or serious bodily injury.  Id. § 1.07(a)(17)(B).








B.        Analysis                                                                                                                    

1.         Driving While Intoxicated             

Foley
contends that the evidence was insufficient to sustain a conviction for driving
while intoxicated.  We disagree.  The evidence showed that:  (1) Foley=s eyes were red and glassy; (2) his speech was slurred;
(3) his breath smelled strongly of alcohol; (4) he had to hold on to the door
of his pickup truck to stand upright; (4) he admitted that he had been driving;
(5) he was geographically disoriented, thinking he was at least seventy miles
north of his actual location; (6) there was an open can of beer in his pickup
truck; (7) there was an unopened can of beer and a partially full bottle of
wine in his pickup; and that (8) Foley=s blood had .26 grams of alcohol per
100 milliliters of blood.  In his defense, Foley argues that Officer Savino
never asked Foley if he suffered a head injury, which could explain his
disorientation at the time of his arrest.  Further, Foley contends that Officer
Savino used field sobriety tests that are not reliable indicators of
inebriation in persons older than sixty-five years old, such as Foley. 
However, viewing all of the evidence in a light favorable to the verdict, we
find that the evidence was sufficient for a rational jury to determine that
Foley was guilty of driving while intoxicated beyond a reasonable doubt.  See
Jackson, 443 U.S. at 318-19; Brooks, 2010 Tex. Crim. App. LEXIS
1240, at **25-26.  We overrule this issue. 

2.         Use of Vehicle as a Deadly Weapon








Foley
also argues that the evidence was insufficient to justify a deadly weapon
finding.[2] 
The Texas Penal Code defines a Adeadly weapon@ as Aanything that in the manner of its use
or intended use is capable of causing death or serious bodily injury.@  Tex. Penal Code
Ann. 1.07(a)(17)(B).  “To determine whether the evidence supports a
deadly weapon finding in cases involving motor vehicles, we conduct a two-part
analysis.”  Hilburn v. State, 312 S.W.3d 169, 177 (Tex. App.—Fort Worth
2010, no pet.) (citing Sierra v. State, 280 S.W.3d 250, 255 (Tex. Crim.
App. 2009)).  We first “evaluate the manner in which the defendant used the
motor vehicle during the felony.”  Sierra, 280 S.W.3d at 255.  We then
“consider whether, during the felony, the motor vehicle was capable of causing
death or serious bodily injury.”  Id.  

To
evaluate the manner in which the defendant used the motor vehicle, we must
determine whether the defendant’s driving was reckless or dangerous.  Id. 
We consider several factors to determine recklessness or dangerousness, such
as:  (1) intoxication; (2) speeding; (3) disregarding traffic signs and
signals; (4) driving erratically; and (5) failure to control the vehicle.  Id.
at 255-56.  The record here shows that Foley was intoxicated.   The evidence
established that Foley smelled of alcohol, had red and glassy eyes, slurred
speech, poor balance, and was geographically disoriented, among other factors. 
The evidence also shows that Foley failed to control his vehicle, given that he
crashed into an aluminum barrier.  See Kuciemba v. State, 310 S.W.3d
460, 462 (Tex. Crim. App. 2010) (finding that “the inference” that an
intoxicated driver caused an accident “is even stronger when the accident is a
one-car collision with an inanimate object.”).  Thus, the evidence is
sufficient to support that Foley’s driving was reckless or dangerous.  Id. 


We
now turn to the second part of the Sierra test—whether the motor vehicle
could cause death or serious bodily injury.  Sierra, 280 S.W.3d at 255. 
To sustain this  finding, several Texas courts have held that there must be
evidence that others were actually endangered in the accident.  See
Cates v. State, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); Drichas v.
State, 219 S.W.3d 471, 476 (Tex. App.–Texarkana 2007, no pet.); Williams
v. State, 946 S.W.2d 432, 435 (Tex. App.–Fort Worth 1997, pet. dism=d).  A hypothetical potential for danger is not
sufficient.  Cates, 102 S.W.3d at 758.  We must Aexamine the record for evidence that there were other
motorists at the >same time and place= as the reckless driving occurred.@  Drichas, 219 S.W.3d at 476; see Williams,
946 S.W.2d at 436 (holding that a deadly weapon finding must be supported by
evidence that Athere was someone present who was
placed in danger of serious bodily injury or death.@).  

The
record here shows that when Foley wrecked, the closest person to his vehicle
was Mallett, who was sixty feet away from the crash, working inside an office
building.  The next closest person, Hill, was 225 feet away.  Although there
was testimony that several businesses are located along the Highway 59 service
road where Foley wrecked, there was no evidence that other motorists were on or
near the road at the time of the accident.  In sum, there is no evidence in the
record before us that there were other persons or vehicles at the same Atime and place@ as Foley.  Drichas, 219 S.W.3d
at 476; Williams, 946 S.W.2d at 436.  No one other than Foley himself “was
placed in danger of serious bodily injury or death.@  Williams, 946 S.W.2d at 436.

Accordingly,
we find that there was not sufficient evidence to support the Adeadly weapon@ finding in this case.  Tex. Penal Code Ann. 1.07(a)(17)(B).  Although
Foley’s driving may have been reckless or dangerous, it could not cause death
or serious bodily injury to others because no other persons or vehicles were in
the immediate vicinity of Foley’s crash.  The evidence is not sufficient for a
rational jury to determine that Foley’s vehicle was operated as a deadly weapon. 
See Jackson, 443 U.S. at 318-19; Brooks, 2010 Tex. Crim. App.
LEXIS 1240, at **25-26.  We sustain this issue.  

III. Conclusion

We
modify the trial court’s judgment to delete the deadly weapon finding, and we
affirm the judgment as modified.  See Tex.
R. App. P. 43.2(b). 

 

                                                                                    DORI
CONTRERAS GARZA

                                                                                    Justice

 

Concurring Memorandum Opinion 

by Justice Linda Reyna Yañez.

Publish.

Tex. R. App.
P. 47.2(b)

Memorandum Opinion delivered and 

filed this the 21st day of December,
2010.  

 









[1] In fact, we are not clear about
Foley=s meaning of the phrase Asocial history.@  





[2] A deadly weapon finding is not
part of a sentence.  Ex parte Huskins, 176 S.W.3d 818, 820-21 (Tex.
Crim. App. 2005); State v. Ross, 953 S.W.2d 748, 751 (Tex. Crim. App.
1997).  While a deadly weapon finding does affect a defendant=s eligibility for probation and
parole, it does not alter the range of punishment to which the defendant is
subject, or affect the number of years assessed.  Huskins, 176 S.W.3d at
821; see Tex. Code Crim. Proc.
Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2010) (providing that community
supervision is not available to a defendant Awhen it is shown that a deadly weapon as defined in Section
1.07, Penal Code was used or exhibited during the commission of a felony
offense . . . .@).